## JEFF BLACK V. THE STATE.

1. QUALIFICATION OF JUROR. A juror, in answer to questions touching his qualifications, said " that he had read the report of the evidence in the " case of The State v. A. J. Walker (jointly indicted with defendant); " that he had formed an opinion thereon as to the guilt or innocence of " the accused ; that it would require other and different evidence to " change that opinion ; that the opinion so formed would not influence

Opinion of the Court.

" his verdict in the slightest degree; and that he would go into the jury
" box and give the accused a fair and impartial trial, according to the
" law and evidence appearing on the trial." *Held*, that the court below
should not have been satisfied that the juror was impartial.

2. WHAT CHARACTER OF OPINION DISQUALIFIES A JUROR. Light impressions, which may be supposed to yield to the testimony offered, and which may leave the mind open to a fair consideration of the testimony, constitute no objection to a juror; but those strong and deep impressions, which will close the mind against the testimony that may be offered in opposition to them, which will combat the testimony and resist its force, do constitute a sufficient objection to him.

3. WHEN QUALIFICATION OF JUROR DOUBTFUL. When it is doubtful whether a juror is qualified, it is more consonant with the spirit of our Constitution and laws, and safer, to decide against his qualification.

APPEAL from Galveston. Tried below before the Hon. Samuel Dodge.

Jeff Black was jointly indicted with Andrew J. Walker for the murder of Green Butler. The facts developed on the trial were identical with those reported in Walker *v.* The State (*ante*, p. 361), with the exceptions stated in the opinion delivered in this case.

The charge of the court in the trial was a reproduction of the charge in Walker *v.* The State, with the exception of the charge as to *alibi*, which the court omitted. The errors assigned in that case, with this exception, are common to this.

Verdict, guilty of murder in the first degree, and punishment fixed at imprisonment in the penitentiary for life.

*Willie & Cleveland,* and *Arthur W. Andrews,* for appellant, cited Moses *v.* The State, 10 Humphries, 460; People *v.* Vermilyea, 7 Cowen, 562; People *v.* Mather, 4 Wend., 231; 2 Stewart & Porter, 308; Rice *v.* Tennessee, 1 Yerger, 435.

*M. C. McLemore,* for the State, cited Henderson *v.* The State, 12 Texas, 531; Monroe *v.* The State, 23 Texas, 231–2; Barrell *v.* The State, 18 Texas, 729, 730.

ROBERTS, C. J. The facts in this case are substantially the

same as in that of Andrew J. Walker, except that Green But-
ler said that he did not know the man that was with Walker
when he was shot by Walker, nor did any witness recognize
him as the person who was there then, and the description so
far as given of the person who was with the person who shot
Butler, did not correspond with the appearance of Black. It
is attempted to be shown that Walker did the shooting, and
that another person was there with him acting his part in the
matter with Walker, and that Black was seen with Walker at
several places, all that afternoon, and in the evening and night
before and after the killing, and that therefore Black was the
man who was with Walker, aiding in the killing of Butler.

The important question of fact is, was Black the person who
was at Butler's with the man who did kill Butler. Whether
he was there or not, as may be inferred from the evidence, de-
pends to a great extent upon the consideration of the time
Butler was killed, and the time and distance from Butler's, at
which he was seen by the witnesses before and after the time
Butler was killed, as to which no intimation of opinion will
be here given.

The ruling of the court upon the application for a change of
venue was the same, upon the same facts, as that in the case of
Walker, their application having been made together, they
being indicted in the same indictment. They severed on the
trial, after their joint application for a change of venue had
been overruled.

The charge of court in this case was the same in substance
as that in the case of Walker v. The State, except that part of
it quoted in the opinion in the Walker case relating to the
*alibi*, which was omitted in the charge of the court in the
Black case. What was said in the opinion in the Walker case
in relation to the overruling of the application for change of
venue, and in relation to the other portions of the charge of
the court, except concerning the *alibi*, need not be here re-
peated, but reference may be had to that opinion, as applying
to this case, with the exception mentioned.

There is another ground of error contained in the bill of exceptions, and in the motion for a new trial, for which also, it is contended, the judgment of conviction should be reversed ; and that is, that after the defendant had, in the selection of the jury, exhausted all of his peremptory challenges, his challenge of B. McIllhenny, one of the jurors, for cause, was overruled, and that thereby he was, against his will, and over his objection, tried by a juror, who was not impartial, as shown to the court by the juror's examination under oath.

Our Constitution provides that "in all criminal prosecutions "the accused shall have a speedy, public trial, by an impartial "jury. (Bill of Rights, Section 8.)

The Code has provided the means of securing an impartial jury, by causing certain questions to be propounded to the juror, for the purpose of ascertaining whether or not he is liable to certain specified grounds of challenge for cause, one of which is as follows : "That from hearsay or otherwise there "is established in the mind of the juror such a conclusion as "to the guilt or innocence of the defendant, as will influence "him in his action in finding the verdict. For the purpose of "ascertaining whether the last cause of challenge exists, the "juror shall be first asked whether in his opinion the conclu-"sion so established will influence his verdict. If he shall "answer in the affirmative, he shall be discharged. If he "shall answer in the negative, he shall be further examined by "the court, or under its directions, as to how his conclusion "was formed, and the extent to which it will affect his action ; "and if the court is not satisfied from such examination that "he is impartial, the juror shall be discharged." (Paschal's Digest, Article 3041.)

"The court is the judge, after proper examination, of the "qualification of a juror." (Paschal's Digest, Article 3044.)

The said juror having answered the above question in the negative, and being further examined, he said "that he had "read the report of the evidence in the case of The State v. A. "J. Walker, that he had formed an opinion thereon as to the

"guilt or innocence of the accused, that it would require other
"and different evidence to change that opinion; that the
"opinion so formed would not influence his verdict in the
"slightest degree, and that he would go into the jury box and
"give the accused a fair and impartial trial, according to the
"law and the evidence appearing on this trial."

By a recurrence to the above quoted provisions of the Code,
it will be seen that the object of the further examination is to
ascertain first, that the juror has formed in his mind a conclu-
sion; second, the source from which it was formed, and third,
the extent to which it will affect his action. When the ques-
tion is first asked the juror, he is made the judge of the ex-
tent to which the conclusion that he has formed will influence
his action. But when he is further examined, the court be-
comes the judge of the extent to which it will influence his
action, and this must be determined by the nature of his con-
clusion, as ascertained from what the juror says in answer to
the questions. A slight, merely general impression, derived
from hearsay or floating rumor, may be denominated a con-
clusion which might not ordinarily be a disqualification. For
it is implied in the shape of the first question as above quoted,
that the juror may have some sort of a conclusion, founded on
hearsay or otherwise, which would not disqualify him. A
general opinion formed without any particular examination
into the facts, and derived from a source in which the juror
placed no great reliance, might be denominated a conclusion,
and still it might generally not disqualify the juror.

On the other hand, a satisfactory conclusion, from hearing
and carefully considering the evidence, would certainly dis-
qualify the juror. In this case, the juror had read the report
of the evidence in the Walker case—Walker and the defend-
ant being charged with the commission of the same offense,
in the same indictment. The report referred to may be pre-
sumed to be the detail of the evidence at a former trial, as
given in the newspapers of the city, which is usually pub-
lished in cases exciting any general interest. He must have

placed reliance in the report of the evidence which he read, in order to have enabled him to have formed a conclusion at all, and the fact that, as he says himself, that it would require other and different evidence to change that opinion, shows, or at least renders it probable, that it was with some considerable attention to, and consideration of the facts reported, that he had formed his conclusion. Under such circumstances we are of opinion that the court below, in judging of the qualification of the juror, should not have been satisfied that he was an impartial juror.

The juror took his seat in the jury-box with a conclusion formed, when the defendant had not been heard, and without the benefit of the instruction of the court as to the law applicable to the case. If his conclusion was in favor of the prisoner's guilt, it was as a weight put in the scale of justice before the trial commenced. Whatever of obstinacy of character and pride of opinion he possessed had to be overcome by other evidence. There are perhaps but few men who do not lean in favor of a preconceived opinion, founded on what they deem to be an authentic source. They look favorably upon whatever will support it, and examine with increased caution whatever will oppose it. The love of consistency in the formation of their judgments requires this of them. No authority has been found for holding that this juror was qualified, and an abundance that is in opposition to it. (See Grayham & Waterman, New Trials, p. 377, and American authorities cited, 378, 379.) In the case of Monroe *v.* The State, cited in support of the ruling of the court below, the judge, before determining that the juror was qualified, satisfied himself by the answers to his questions, that the juror had really formed no conclusion as to the guilt or innocence of the prisoner. (23 Texas, 210.) Perhaps the general rule, as to the impartiality of a juror under our code cannot be better laid down than it was by Chief Justice Marshall, in the Burr case, which is as follows: "Light impressions, which may be supposed to "yield to the testimony offered, which may leave the mind

"open to a fair consideration of the testimony, constitute no
"objection to a juror; but those strong and deep impressions
"which will close the mind against the testimony that may be
"offered in opposition to them, which will combat the testi-
"mony and resist its force, do constitute a sufficient objection
"to him." (1 Burr's Trial, 416.) When the conclusion formed
is such that. it will require other and different evidence from
that on which he has confidently relied in forming such con-
clusion to change it, and the evidence on which he has based it
is a report of the evidence in the case, believed by him to be
reasonably authentic and correct, it can hardly be said that he
is an impartial juror.    And when upon an examination of the
juror, it was doubtful whether he was impartial or not, it
would be safer, and more in unison with the spirit of our Con-
stitution and laws relating to the trial by jury, to decide
against the qualification of the juror.    (Moses v. The State, 10
Humph. Tenn. Rep., 456.)

We are of opinion that the court erred in overruling the
motion for a new trial, upon the grounds that have been re-
ferred to, and therefore the judgment must be reversed and
the cause remanded.

Reversed and remanded.