## DAN SCRIBNER v. STATE.

No. A-303.  Opinion Filed March 31, 1910.

(108 Pac: 422.)

1.   JURY — Competency of Jurors—Opinion as to Guilt. Persons called as jurors, who have heard and read detailed accounts of an alleged offense, from which they have formed such an opinion as to the guilt of the accused as will require evidence to remove, are not qualified jurors, although they believe and express their belief that they can and will fairly try the case upon the .testimony produced.

2.   SAME—Nature of Opinion. The opinion necessary to disqualify a juror must ·be one based on what purports to be the facts and one that will combat the evidence.

3.   JURY—Disqualification of Juror—Prejudice. The trial court is not limited to the answers made by the juror, but must be satis-fied from all the circumstances as well as the examination that the juror is not prejudiced against the accused.

4.   JURY—Examination of Juror—Opinion. Where the juror says he has an opinion, the accused should be given an opportunity to examine him fully as to the extent of his opinion.

(Syllabus by the Court.)

*Error from District Court, Pontotoc County; A. T. West, Judge.*

The plaintiff in error, Dan Scribner, was tried in the district court of Pontotoc County on a charge of murder. He was con-

victed, and his punishment fixed at death.    Reversed and re-
manded.

*J. F. McKeel* and *Crawford & Bolen,* for plaintiff in error.
—On disqualification of jurors: *Johnson v. State,* 1 Okla. Cr.
321; *Bradford v. Territory,* 2 Okla. 230; *Huntley v. Territory,*
7 Okla. 60; *State v. Start,* 56 Pac. 15; *State v. Morrison,* 68
Pac. 41.

*Charles West,* Atty. Gen., *Chas. L. Moore,* Asst. Atty. Gen.,
and *Robert Wimbish,* Co. Atty., for the State.—On disqualification
of jurors: *Johnson v. State,* 1 Okla. Cr. 321; *Huntley v. Terri-
tory,* 7 Okla. 60; *State v. Sawtell,* 10 Am. Crim. Rep. 347; *Hopt
v. Utah,* 120 U. S. 430.

OWEN, JUDGE.    There are numerous errors alleged in the
petition filed in this case, the most important of which, and the
only one necessary to notice here, is assignment No. 17.    This as-
signment appears in the following language:

"The court erred in not affording this plaintiff in error a
fair and impartial trial before a fair and impartial jury, as pro-
vided in section 20 of the Bill of Rights, in this:    That the court
overruled this plaintiff in error's challenge to a number of jurors
who stated on their *voir dire* examination that they had formed an
opinion as to the guilt of this plaintiff in error, and that they
then had such opinion, and that it would take evidence to remove
it; that on said examination ten (10) jurors stated that they had
formed an opinion, and still had an opinion, as to the guilt or
innocence of the plaintiff in error, and the court held that they
were not thereby disqualified, and overruled this plaintiff in error's
challenge to such jurors, and this plaintiff in error was reduced to
the necessity of using his peremptory challenge in excusing the
most objectionable of such jurors, but was compelled to permit
some of the said jurors so entertaining said opinion to sit on the
jury and try said cause; wherefore, the plaintiff in error says that
he did not have a trial before a fair and impartial jury."

No case has been presented to this court with greater skill and
energy than that displayed and exercised on part of the attor-
neys for the state in this case.    The able county attorney, who
prosecuted this case below, for his able and fair presentation of
the matter in this court deserves the thanks of this court.

The question presented under this assignment of error is one that strikes at the very foundation of our jurisprudence. Two cardinal principles of our system are, that every man shall be clothed with the presumption of innocence, and that he shall have a fair trial by an impartial jury.

Section 6 of our Bill of Rights provides: "Right and justice shall be administered without sale, denial, delay, or prejudice."

Section 20 provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury."

A fair sample of the examination of the jurors complained of as objectionable, and who sat in the case, is as follows:

"John McKinney: Q. You have formed an opinion? A. Yes, sir. Q. That opinion, formed from what you have heard, you could not give this defendant the same fair and impartial trial as if you had not heard anything? A. I do not think that I could; if I had never heard anything about it, I would not have formed an opinion. Q. But now you have an opinion? A. Yes, sir. Q. In your present frame of mind, with what you have heard, you could convict the defendant on less evidence than if you had not heard anything? The state objects to the form of the question. Objected sustained, and excepted to. This juror challenged by the defendant for cause. Mr. Wimbish: Q. What you have heard about this case was based on rumor, wasn't it? A. Yes, sir. Q. You havn't talked to anybody who was a witness in the case? A. No, sir. Q. Regardless of this rumor that you have heard, can you and will you, if taken as a juror in this case, go into the jury box and take the testimony of the witnesses on the witness stand and the charge of the court, and give this man a fair and impartial trial, notwithstanding the opinion that you have, based upon rumor? A. Yes, sir. The court overrules the defendant's challenge. The defendant excepts."

"J. W. Fuller: Q. You say that you have heard a good deal about this case? A. Yes; I have heard a good deal. Q. You have heard the facts in the case detailed? A. Yes; from rumor and reports, I have. Q. Have you heard a statement of what purported to be the facts in the case? A. Yes, sir. Q. And from that you have formed an opinion? A. Yes, sir. Q. You have that opinion at this time? A. Yes, sir. Q. It would take evidence to remove that opinion? A. Yes, sir."

In this case we are called upon to say whether a man shall be deprived of his life by the verdict of a jury when the record discloses that 10 of the persons called and examined as jurors said under oath that they had formed an opinion as to the guilt of the defendant, and that it would require evidence to remove that opinion. The juror McKinney frankly admitted that he could not give the defendant the same fair trial that he could have given if he had not heard of the case. He was asked if he would not convict on less evidence than if he had not heard of the case. The court sustained the state's objection to the question, and did not permit him to answer. This was error. The defendant had the right to know. The court should permit a full investigation when a juror says he has an opinion. If he would require less evidence to convict, he is not a qualified juror. The defendant exhausted his peremptory challenges allowed him by law, and was compelled to accept as jurors four persons who had formed an opinion as to his guilt or innocence.

It has been urged with much force in this case that under the statutes of this state a juror is qualified although he had an opinion, provided it appears to the court upon his declaration that he can and will, notwithstanding such opinion, act impartially and fairly, upon the matters to be submitted to him. This statute was construed by this court in the case of *Johnson v. State,* 1 Okla. Cr. 321, 97 Pac. 1059. The court in an opinion delivered by the presiding judge said:

"But the enumerated causes of challenge in the statute are not exclusive of all others not enumerated. When the juror has any opinion as to the guilt of the defendant, it matters not how this opinion was formed, the closing paragraph of the statute provides that it must appear to the court that the juror can and will act fairly and impartially in the case. But if this provision was not in the statute, we would be forced to place this construction upon the first part of the statute, because section 29 of our Constitution (Bunn's Ed.) is in this language: 'In all criminal prosecutions, the accused shall have the right to a speedy and public trial by an impartial jury.' Const. art. 2, § 20. Any statute which would even tend to deprive a defendant of a trial by an impartial jury would be unconstitutional and void.

Although a juror may know absolutely nothing about the facts of the case, and may not have the slightest opinion as to the guilt of the defendant, yet if from any cause or upon any ground it appears to the trial court that the juror is biased or prejudiced against the defendant, it cannot be said that he would be a fair and impartial juror, and he should be excluded from the jury; otherwise the Constitution of the state would be disregarded and trampled upon. The trial court should resolve all doubts upon this matter in favor of the defendant. Upon the other hand, when no personal, class, or race bias or prejudice appears to exist in the mind of the juror against the defendant, but it does appear that from rumor, or reading the public press, or from notoriety, the juror has an opinion as to the guilt of the defendant, but that such opinion will not combat the testimony or resist its force, and the court is satisfied that the juror can and will lay this opinion aside, and base his verdict alone upon the testimony of the witnesses and the instructions of the court, then the juror is competent. To our minds this is the only rational construction which can be placed upon our statute."

In the case at bar we have reviewed at considerable length a great number of authorities on this proposition, and such research has convinced us that the weight of modern authority as well as reason is that, if from any cause the juror has such an opinion as will preclude a fair trial, he is disqualified, without regard to the causes enumerated in the statute.

In the case of *State v. Start,* 60 Kan. 256, 56 Pac. 15, the Supreme Court of Kansas, in passing on a similar question, used this language:

"Persons called as jurors who have heard and read detailed accounts of an alleged offense, from which they have formed fixed and positive opinions as to the guilt of the defendant that still remain with them, and who state on examination that they then have no doubt of the defendant's guilt, are not qualified jurors, although they believe and express their belief that they can fairly try the case upon the testimony produced."

In the case of *Black v. State,* 42 Tex. 377, in passing on a similar question, the Supreme Court of that state said:

"A general opinion, formed without any particular examination into the facts, and derived from a source in which the juror placed no great reliance, might be denominated a conclusion, and

still it might generally not disqualify the juror. On the other hand, a satisfactory conclusion, from hearing and carefully considering the evidence, would certainly disqualify the juror. In this case the juror had read the report of the evidence in the Walker Case; Walker and the defendant being charged with the commission of the same offense, in the same indictment. The report referred to may be presumed to be the detail of the evidence at a former trial, as given in the newspapers of the city, which is usually published in cases exciting any general interest. He must have placed reliance in the report of the evidence which he read in order to have enabled him to have formed a conclusion at all, and the fact that, as he says himself, that it would require other and different evidence to change that opinion, shows, or at least renders it probable, that it was with some considerable attention to and consideration of the facts reported, that he had formed his conclusion. Under such circumstances, we are of opinion that the court below, in judging of the qualification of the juror, should not have been satisfied that he was an impartial juror. The juror took his seat in the jury box with a conclusion formed, when the defendant had not been heard, and without the benefit of the instruction of the court as to the law applicable to the case. If his conclusion was in favor of the prisoner's guilt, it was as a weight put in the scale of justice before the trial commenced. Whatever of obstinacy of character and pride of opinion he possessed had to be overcome by other evidence. There are perhaps but few men who do not lean in favor of a preconceived opinion, founded on what they deem to be authentic source. They look favorably upon whatever will support it, and examine with increased caution whatever will oppose it. The love of consistency in the formation of their judgments requires this of them. No authority has been found for holding that this juror was qualified, and an abundance that is in opposition to it."

One of the best considered cases on this question we find reported in *Rothschild v. State,* 7 Tex. App. 519. In that case the court in an opinion delivered by Judge Clark said:

"This juror, William Sanders, on his *voir dire* appeared to be qualified, and was accepted by the state. Upon examination by the defendant, he stated that he had heard the case talked about a good deal, had formed an opinion as to the guilt or innocence of the defendant from what he had heard, and that opinion was that he was guilty. He had not only formed the opinion, but had expressed it frequently, having heard the case talked about a

good deal. This opinion was formed the first time he had heard the circumstances, and had continued until the present time, and was now his opinion. It was based upon what he had heard from outsiders, and he had never heard any particulars or read any evidence in the case, but he believed what he heard to be true, and still believed it. He would not take this opinion in the jury box if selected as a juror, but would throw it aside, and go by the evidence, as he could lay aside his opinions at will. * * *

"A mere impression, though derived from the testimony, does not disqualify if it be perfectly apparent, not from what the juror may say, but from all the evidence bearing on the issue, that such impressions will not influence his action in finding a verdict; and, on the other hand, a disqualifying opinion may be formed from mere hearsay. * * * The fact that a juror may say that, notwithstanding his opinion formed from hearsay, he can try the case impartially, manifests in most instances a recklessness of judgment and a state of mind less prepared to receive and allow a fair defense than if he had believed on proof which furnishes at least *prima facie* evidence of guilt. * * *

"Mr. Bishop, our most thoughtful and philosophic writer on criminal law, after a full citation of the leading American authorities, deduces the true rule as follows: 'The true view would seem to be that, since the law presumes every man to be innocent until he is by judicial evidence proved in a court of justice to be guilty, and since the burden is on the prosecuting power to make the guilt appear affirmatively by proofs' produced at the trial, if a man leaps in advance of the law, and settles in his own mind the question of guilt against the prisoner, whether by reason of what he has read or heard, or by reason of an inner impulse which condemns before it hears, he is not a fit person to be a juror in the cause; for his mind, which ought at least to be a blank on which the evidence might write its conclusions, is already preoccupied. It is vain for a man to say, or even believe, that he can judge impartially of a matter which he has already determined. Human nature, as developed in the average of men, does not permit this. The juror is to hear, and then say what he believes; but, if he believes before hearing that only which can lawfully affect his belief—namely, the testimony of the witnesses in open court—he is, in legal reason, disqualified to hear and be swayed by the testimony. It is immaterial, therefore, whether the belief, which comes not according to the law, is derived from ru-

mor, or from listening to statements of a more reliable sort. Likewise, if the juror has not expressed his belief, he is still unfit, though the expression of it might render him unfit in a yet higher degree. Such is the legal reason which should govern the question.' 1 Bishop's Cr. Proc. § 910.

"Judge Marshall, in passing upon the question in *Burr's Case,* used these words: 'I have always conceived, and still conceive, an impartial jury, as required by the common law and as secured by the Constitution, must be composed of men who will fairly hear the testimony which may be offered to them, and bring in their verdict according to that testimony, and according to the law arising on it. This is not to be expected—certainly the law does not expect it—where the jurors, before they hear the testimony, have deliberately formed and delivered an opinion that the person whom they are to try is guilty or innocent of the charge alleged against him.' *Burr's Trial,* 128.

"Judge Taney, in a criminal trial in 1854, held that: 'If the juror has formed an opinion that the prisoners are guilty, and entertains that opinion now, without waiting to hear the testimony, then he is incompetent.' Whart. Cr. Law, § 2981.

"Similar views were expressed by the Chief Justice in *Black v. State,* and it was there said that the fact that the juror himself said it would require other and different evidence to change his opinion showed, or at least rendered it probable, that it was with some considerable attention to and consideration of the facts reported that he had formed his conclusion. And it was further held that, if upon an examination of the juror it was doubtful whether he was impartial or not, it would be safer, and more in unison with the spirit of our Constitution and laws relating to the trial by jury, to decide against the qualification of the juror. 42 Tex. 382, 383.

"While we recognize the rule that the action of the lower court in passing upon the qualifications of a juror should not be reviewed except in a clear case (*Reynolds v. United States,* 8 Otto, 157 [25 L. Ed. 244]), yet, after a careful consideration of the law and the facts pertaining to the juror Sanders, we are constrained to say that he was not a fit person to pass upon the life of the prisoner. From his own testimony, he had formed an opinion that the prisoner was guilty at the time he had first heard of the occurrence, which opinion had remained with him from that time continuously to the time of trial—a period of nearly two years. He had heard the case talked about a great

deal, believed what he had heard, and had frequently expressed the opinion that the defendant was guilty, and that he would take his seat upon the jury prepared to act upon it as an established opinion in case he heard nothing else to change it. In the language of Hawkins, the juror 'hath declared his opinion beforehand that the party is guilty:' and according to the doctrine accepted nearly everywhere in the United States, and probably in every other locality where the common law prevails, he was incompetent. 1 Bishop's Cr. Proc. § 909. Certainly the repetition of his examination as many as six different times by the respective parties and the court is most convincing that his qualifications were of so doubtful a character that he should have been rejected on a challenge for cause."

In the case of *Ward v. State,* 19 Tex. App. 664, in an opinion delivered by Judge Hurt, a more learned criminal lawyer than whom never wrote an opinion, the court said:

"This conviction was for the killing of Robert Fly. We will treat the first and third assigned errors together.

"First error assigned: That the court erred in overruling the defendant's challenge for cause to the juror J. R. Scates, and compelled defendant to challenge him peremptorily. Upon his *voir dire* Scates answered: 'I have talked to witnesses about the case; have strong opinions as to his guilt or innocence; have expressed those opinions; it would take good, positive, and conclusive evidence of truthful men to change my opinion'; but his opinions would not influence his verdict.

"Third error: In overruling defendant's challenge for cause to W. W. Bailey. Upon his *voir dire* this juror answered: 'I have some opinion now as to his guilt or innocence. It would take evidence to change that opinion. I got that opinion from hearsay or general gossip. I heard about it through talk and newspapers. What I read purported to be the truth, as well as I remember it. It is a settled opinion now. If the evidence turned out as I have read it, I would be of the same opinion still. I think that opinion would not influence my verdict.'

"The juror Newton, on his *voir dire,* said: 'I have formed an opinion as to the guilt of defendant from hearsay. It would take evidence to remove that opinion. I could discard that opinion, try the case on the evidence, but the opinion might have a bearing on me.'

"R. B. Ship said: 'I have formed and expressed an opinion

3 Cr.—39

as to the guilt or innocence of the defendant. I could not discard it in going into the jury box. It would take evidence to change it. I would render a verdict upon the evidence uninfluenced by that opinion. The parties who told me were not witnesses, but told me what purported to be the circumstances and facts of the case, and may have had other conversations since then with some parties.'

"All of these objectionable jurors, except Bailey and Ship, when defendant's challenges for cause were overruled, were challenged peremptorily, and did not serve on the jury. Defendant, however, exhausted his peremptory challenges. That each and every one of these jurors were obnoxious to challenge for cause there can be no doubt or question.

"We have had under consideration the questions presented in this record relating to the competency of the jurors for quite a long while. We have carefully examined and compared the authorities bearing upon this subject, with a view of making, if possible, a clearer statement of the principles of law applicable thereto than we have already done; but we are forced to concede our inability to make a clearer or more lucid exposition of the law than that already made. The opinion of Judge Clark in the Rothschild Case is not only a model for style and logic, but is, we believe, exhaustive of the subject.

"In support, therefore, of the position that the above-named persons were incompetent because they had formed an opinion of the guilt of defendant, which was calculated 'to influence their verdict, we submit the following authorities: *Rothschild v. State*, 7 Tex. App. 540; *Burrell v. State*, 18 Tex. 713; *Johnson v. State*, 27 Tex. 758; *Sharp v. State*, 6 Tex. App. 650; *Bejarano v. State*, Id. 265; *Krebs v. State*, 8 Tex. App. 1; *Loggins v. State*, 12 Tex. App. 65."

It has been urged in this case that on the evidence produced the jury could not have returned other than a verdict of guilty, and therefore the defendant was not prejudiced by reason of the fact that some of the jurors had formed an opinion as to his guilt. As to whether a different verdict could not have been returned on the evidence, we are not called upon to decide. We might concede that such is true; that being true, we cannot agree that the defendant was not deprived of the rights guaranteed to him under our Constitution. The fact remains that this jury fixed his punishment at death. In determining this case,

although the evidence may show the defendant guilty beyond all peradventure of a doubt, and sufficient to support a verdict with the death penalty, we must nevertheless set a precedent under which a perfectly innocent man may be tried and have preserved to him his constitutional rights of the presumption of innocence, and a trial before an impartial jury. If a juror has prejudged the guilt of the defendant before hearing the sworn testimony, then it cannot be said that the defendant had a trial before an impartial jury. It is a physical impossibility for a juror, who has an opinion based on what he has understood to be the facts in the case, to weigh the evidence as though he had never heard of the case and had not already made up his mind. He may have an earnest and conscientious desire to do so and to deal out exact justice. but he will unconsciously attach a greater weight to the evidence which conforms to his preconceived opinion than he would otherwise do. He is not in that frame of mind which the Constitution contemplates, and which is necessary to enable him to fairly and impartially judge as to the weight to be given to the evidence of each witness appearing before him. The determination of the qualifications of a juror is a matter addressed to the discretion of the trial court, and the question to be determined here is whether the trial court in this case abused this discretion to the prejudice of the defendant.

After a careful review of the numerous authorities called to our attention by the counsel in the case, and those which we have been able to find by our own efforts, we are convinced that the court did abuse such discretion to the prejudice of the defendant. The principle that every reasonable doubt must be resolved in favor of the defendant applies in this instance as well as to the evidence offered before the jury on the final trial. The evidence offered as to the qualifications of the jurors enters into and becomes a material part of the trial, as much so as the evidence offered by the witnesses on the part of the state, and in this case the trial court should have resolved that doubt in favor of the defendant, and sustained his challenges for cause to these jurors.

We deem it unnecessary to review the other errors com-

plained of. They are directed principally to the action of the court in refusing a change of venue and in drawing and summoning the panel of jurors from which the trial jury was selected. These are questions not likely to arise on the next trial of this case, and not necessary to be considered here.

For the refusal of the court to sustain the challenge made to the jurors who testified on their *voir dire* that they had formed such an opinion as to the guilt of the defendant as would require evidence to remove, the judgment of the lower court must be reversed.

FURMAN, PRESIDING JUDGE (concurring). The record shows that John McKinney sat as a juror in this case, and that upon his examination as such juror, among other things, he said from what he had heard he had an opinion as to the guilt of the defendant, and that he did not believe that he could give the defendant the same fair and impartial trial as if he had not heard anything about the case. The juror was then asked: "In your present frame of mind, from what you have heard, you could convict the defendant on less evidence than if you had not heard anything?" Objection being made, the juror was not permitted to answer this question. In answer to questions asked by the county attorney, the juror stated that he had never talked to a witness in the case, that his opinion was based upon rumor, and that if taken upon the jury he could and would give the defendant a fair and impartial trial notwithstanding this opinion, and would be governed alone in making up his verdict by the testimony of the witnesses on the stand and the charge of the court. Thereupon the court overruled the challenge of the defendant, and the juror was sworn in the cause over the protest and exception of the defendant.

When a juror states that he had an opinion as to the guilt of a defendant, he is not made competent to sit in the case merely because he may state that he can and will lay this opinion aside if taken on the jury, and give the defendant a fair and impartial trial, and be governed alone in making up his verdict by the tes-

timony of the witnesses and the charge of the court. The juror is not the judge of his own competency, of his own impartiality, and of his own freedom from prejudice. No statute can clothe him with such judicial discretion and power. The competency of the juror is left to the discretion of the court, and the presiding judge is not bound by the answers of the juror. It is the judge and not the juror who is charged with the duty of passing upon the competency of the juror, and in the discharge of this duty the judge may have recourse to any means of information within his power. In fact he should carefully investigate every source which would be calculated to throw any light upon the competency of a juror. and if the judge is not entirely satisfied of the competency of the juror, he should be excused. In *Johnson v. State*, 1 Okla. Cr. 348, 97 Pac. 1070, this court said:

"'The question of the competency of jurors is addressed to the sound discretion of the trial court, and, in the absence of an abuse of that discretion, it is not subject to review; in other words, while the trial court must be clearly satisfied that a juror is fair and impartial before permitting him to sit in a criminal case, yet upon appeal to this court it must be clearly shown that the trial court abused its discretion before this court will review its rulings in this respect."

We think it clear that the trial court erred in two particulars in passing upon the competency of the juror McKinney: First, this juror frankly stated that on account of what he had heard he did not think that he could give the defendant the same fair and impartial trial as if he had not heard anything. This was stating, in effect, that the juror believed that the opinion which he then entertained would influence his action in finding a verdict; that it might combat the evidence of the witnesses and resist its force. It is the nature of the opinion, and not the source from which it is derived, that we are considering. We do not claim that any impression which a juror may have as to the guilt of a defendant will necessarily disqualify the juror, but we do say that, when the juror is shown to have an opinion as to the guilt of the defendant, it matters not from what source it comes, then the burden is on the state to show that this opinion is such that

it does not affect the fairness and impartiality of the juror. This is the letter and the spirit of our statute. Section 5475, Wilson's Rev. & Ann. St. Okla. 1903, is as follows:

"In a challenge for implied bias, one or more of the causes stated in the second preceding section must be alleged. In a challenge for actual bias, the cause stated in the second subdivision of the third preceding section, must be alleged, but no person shall be disqualified as a juror by reason of having formed or expressed an opinion upon the matter or cause to be submitted to such jury, founded upon rumor, statements in public journals, or common notoriety, provided it appears to the court, upon his declaration, under oath or otherwise, that he can and will, notwithstanding such opinion, act impartially and fairly upon the matters to be submitted to him. The challenge may be oral, but must be entered upon the minutes of the court."

So it is seen that according to the statute it is the court and not the juror who must be satisfied as to the fairness and impartiality of the juror, and that the judge is not bound by the answers of the juror, but may inform himself "otherwise." But even if this were not the statute, it is the plain meaning and intent of our Constitution, and as such it is our first duty to enforce it.

The juror McKinney, just after having expressed the opinion that he did not think that he could give the defendant the same fair and impartial trial that he could give him if he had never heard anything about the case, did, in answer to the question of the county attorney, state that if taken on the jury he could and would lay his opinion aside, and be governed as a juror alone by the testimony of the witnesses and the charge of the court. This shows that the juror was himself uncertain as to his mental condition, and was varying as to what his action would be if taken on the jury, and, of itself, should have caused the trial court to sustain the challenge for cause.

Second, counsel for the defendant asked the juror this question: "In your present frame of mind, with what you have heard, you could convict the defendant on less evidence than if you had not heard anything?" The court erred in not permitting this question to be answered. While it is true that the court

would not be bound by the answers of the juror, yet, when it is disclosed that a juror has an opinion, in all fairness the court should permit the most searching cross-examination of the juror as to the origin, extent, and probable effect of such opinion. This is especially true in capital cases. The graver the case and the more severe the punishment liable to be inflicted, the more cautious the court should be in safeguarding all of the substantial rights of a defendant. But it may be said that the defendant is guilty, and that therefore it is immaterial as to whether the law was complied with. Such a statement as this is the first step toward lynch law, and if recognized by this court, would wipe out and destroy every constitutional right, and would establish a precedent which, if followed, would result in arbitrary punishment in the name of the law; a consummation dangerous to liberty and innocence, and utterly inconsistent with the perpetuity of our free institutions. We heartily assent to the proposition that when a defendant has been properly indicted and fairly tried, and the evidence clearly shows that he is guilty, then a conviction should not be set aside on account of any mere matter of form or any exception which did not deprive the defendant of a substantial right. We have uniformly recognized and adhered to this rule, as our decisions will conclusively show. But it is an utter misapprehension of the doctrine of harmless error to suppose that when a defendant has been deprived of a substantial right, the error was or could be harmless. If this was correct, then the doctrine itself would become a mighty engine of wrong and oppression; in fact it would be the entering wedge of anarchy, for it would result in the destruction of all law, and substitute in its place the arbitrary will of the judges and jurors.

Section 5618, Wilson's Rev. & Ann. St. Okla. 1903, is as follows:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

This forbids this court from reversing a conviction upon any technicality or exception which did not affect the substantial

rights of the defendant. This is the doctrine of harmless error in a nutshell. The converse of this statutory provision is that we must reverse convictions when the defendant has been deprived of a substantial right.

The court instructed the jury as follows:

"In connection with the evidence in this case, you are instructed that a conviction cannot be had upon the testimony of an accomplice unless it be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows that commission of the offense or the circumstances thereof; that is, in this case, you cannot convict the defendant, Dan Scribner, upon the uncorroborated testimony of the witness Ed Johnson, for the reason that the evidence shows him to be an accomplice. However, if you are satisfied that the witness Ed Johnson speaks the truth in some material parts of his testimony in which you see him corroborated or confirmed by other unimpeachable evidence, this may be ground for your believing that he also speaks the truth in other parts of his testimony in which there may be no confirmation, but this corroboration ought to be as to some fact which tends to connect the defendant with the commission of the offense."

The vice of this instruction lies in the fact that the court tells the jury that the corroboration of the accomplice ought to be as to some fact which tends to connect the defendant with the commission of the offense. The law prohibits a jury from convicting a defendant upon the testimony of an accomplice, unless such testimony is corroborated by other testimony which tends to connect the defendant with the offense committed. The law is mandatory. This instruction is only advisory, and qualifies and is contradictory of the first portion of the instruction, which correctly states the law. When this is the case, no one can tell upon what portion of the instruction the jury acted in finding their verdict. Such instructions are universally condemned, both upon principle and by the authorities, without a single exception, so far as our investigations have gone.

For the reasons above given, I concur in the opinion that the judgment against the defendant should be reversed. While it is

of great importance that every guilty man should be speedily brought to justice and punished for his crime, yet it is of still greater importance that the citizens of Oklahoma should know that the courts of the state will secure to each and every one of them, it matters not how poor, friendless, and unpopular he may be, the full protection afforded by each substantial privilege and right guaranteed to them by the Constitution and laws of the state. This court will discharge its full duty in this respect, without partiality, fear, or favor, let it please or displease whomsoever it may.

The judgment against the defendant is therefore reversed, and the cause remanded, with directions that a new trial be granted the defendant.

DOYLE, JUDGE (concurring). I would be content with concurring in the opinions of my Brethren were it not that they reverse the conviction for bias and prejudice of jurors only, and the erroneous instruction on the necessary corroboration of an accomplice, while I believe they should have gone further, and held that the trial court erred in denying the application for a change of venue. The crime charged and the manner of its perpetration was of a character to arouse the greatest public indignation, and, without going at large into a discussion of the affidavits and other evidence offered in support of the application, it is sufficient to notice the fact that to protect the defendant from mob violence he was removed by the sheriff from Pontotoc county, and that this state of feeling continued until and through the trial, and must have had such effect upon the jury as that their verdict was little else than the reflection of the common belief that the defendant was guilty, and as a means of carrying out the public purpose of having defendant pay the penalty with his life. The trial was not, and could not under the circumstances then and there existing, have been fair and impartial. A public trial by an impartial jury and that justice shall be administered without prejudice are the great constitutional safeguards

against oppression and injustice, that must not be abridged or compromised. Prejudice and prejudgment are synonymous. That there was such prejudgment of the case as that defendant could not obtain a fair and impartial trial in Pontotoc county was clearly shown, and I believe that it was an abuse of discretion for the trial court to deny the application for a change of venue.