## M. W. MASK v. STATE.

No. A-208.   Opinion Filed March 7, 1911.

(113 Pac. 995.)

1. NEW TRIAL—Disqualification of Jurors. Where a juror qualifies on his voir dire and states that he has no bias or prejudice against the defendant and has no opinion as to his guilt or innocence, and after the trial it is shown beyond contradiction that the juror had discussed the case during the progress of the trial, expressing an opinion adverse to defendant before all the testimony had been introduced, and had expressed an opinion prior to the trial as to the merits of the case, all of which was unknown to the defendant or his counsel until after the rendition of the verdict, the defendant is entitled to a new trial.

2. NEW TRIAL—Impartial Jury. Persons charged with violations of the criminal law are entitled to a trial before a fair and impartial jury, and, if a juror has prejudged the guilt of the defendant before hearing the sworn testimony, it cannot be said that the defendant has had a trial before a fair and impartial jury.

(Syllabus by the Court.)

*Appeal from Kiowa County Court; J. W. Mansell, Judge.*

M. W. Mask was convicted of selling whisky and appeals. Reversed and remanded.

*Ernest M. Bradley,* for appellant.

*Smith C. Matson,* Asst. Atty. Gen., for the State.

ARMSTRONG, JUDGE. The appellant was tried in Kiowa county on the 6th day of June, 1909, at a regular term of the county court, and convicted for selling whisky. His appeal has been properly perfected.

The only error we deem it necessary to discuss in this record is that in appellant's first assignment, which is as follows:

"That one J. R. Griffiths, a juror in the trial of said cause, was disqualified to sit on the jury in the court below. That said disqualification of said juror was not known to either the defendant below, or to his attorney of record, until after the trial of the defendant; and a new trial should have been granted because of the flagrant misconduct of said juror."

In appellant's motion for a new trial, he complained of the disqualification of this juror and urged that as a ground for a new hearing. Two witnesses, Parker and Garvey, were sworn, and also counsel for the appellant, and testified on this motion. The following extract is taken from the testimony of Parker:

"Q. What conversation did you have with him (referring to the juror Griffiths)? A. I was sitting in the rear end of the pool hall, and Mr. Griffiths came up, and I says, 'Are you working to-day?' He says, 'No, I just got on the jury.' I says, 'What jury?' He says, 'Buck Mask.' I says, 'What you going to do about it?' He says, We'll stick him, I guess.' That's about all."

The juror Griffiths was afterward put on, and the following is taken from his testimony:

"Q. Mr. Griffiths, state what that conversation was, will you, you had (referring to the conversation had with the witness Parker)? A. Yes, I had not talked of the case since then. As well as I can remember, I walked in, and Mr. Parker was sitting by the stove; and he, knowing I was on the jury, I reckon, asked me what they were going to do. No, I believe the way it come up, he asked me if I was working. I told him I was on the jury. Told him it was the Buck Mask case. He says, 'What you going to do with Buck?' I says, 'I guess they'll stick him.'"

This conversation occurred after the jury had been impaneled and during the progress of the trial, before the testimony was completed. It appears to have been during the noon recess; the jury having been permitted to separate for their noon meal. The record further shows that this witness had talked of the case prior to the impaneling of the jury. We take the following from the testimony of the witness Garvey:

"Q. What conversation, if any, did you have with J. R. Griffiths, the carpenter, before the trial of this case? A. Well, we was working up there on the Thompson house and Mr. Freeman. They was talking about bootlegging cases. He said he had been summoned on the jury, and Mr. Freeman said, 'I would stick every one of 'em,' and Mr. Griffiths says, 'Yes, I would stick 'em too.' Talking about the Buck Mask case, and I think Mr. Griffiths said they had better not have him on the jury if they didn't want to stick him. Q. About when was that conversation?

A. Between eight and nine days ago, probably ten. Mr. Griffiths come back after a while I believe that day, and I asked him what they was going to do with Buck Mask, and he said it was put off, or didn't come up, I don't know which."

The witness Griffiths, who was the juror in question, asked about this conversation, testified as follows:

"Q. You heard the other conversation you are purported to have had? A. Yes, sir. Q. About ten days ago did you have that conversation? A. Yes, I suppose something to that effect. Of course I couldn't say that it was just exactly the way he stated it."

The record futher shows by the testimony introduced by the appellant and uncontroverted that the juror was examined on his *voir dire* and qualified that he had no bias or prejudice against the defendant, and the fact that this juror had these conversations and had been guilty of discussing the case during the progress of the trial was unknown to counsel or the appellant until after the verdict was rendered.

That this juror was clearly biased and prejudiced against the appellant appears from the admissions in his testimony, quoted *supra*, although he stated upon his *voir dire* that he had no bias or prejudice against the appellant. In the case of *Scribner v. State,* 3 Okla. Cr. 601, 108 Pac. 422, this court, in discussing the question of the right to trial before an impartial jury, speaking through Judge Owen, said:

. "In determining this case, although the evidence may show the defendant guilty beyond all peradventure of a doubt, and sufficient to support a verdict, * * * we must nevertheless set a precedent under which a perfectly innocent man may be tried and have preserved to him his constitutional rights of the presumption of innocence and a trial before an impartial jury. If a juror has prejudged the guilt of the defendant before hearing the sworn testimony, then it cannot be said that the defendant had a trial before an impartial jury." ·

See, also, *Turner v. State*, 4 Okla. Cr. 164, 111 Pac. 988.

From a careful examinatiotn of this record, we are forced

to conclude that the appellant did not have that fair and impartial trial guaranteed to every citizen.

The motion for a new trial should have been sustained. The judgment of the court below is reversed, and this cause remanded, with direction to the court below to grant the appellant a new trial.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.