ASA C. SHARP V. UNITED STATES OF AMERICA.

(Filed January 12, 1904.)

1. JURY—Manner of Preparing List and Drawing Grand Jurors. The provisions of the statute in regard to the mode of obtaining jurors are directory, and a substantial compliance with the requirements of the law is sufficient. The court will not reverse the ruling of the district court overruling a motion to set aside an indictment on the grounds that the grand jury were not chosen, selected and drawn according to the provisions of the statute and overruling an objection to the manner in which the list of persons from which the panel was selected, was made up, when such objections are purely technical, and do not affect the substantial rights of the parties, and when it does not appear that any material right has been lost thereby.

2. INDICTMENT. Charging the offense of bribery substantially in the language of the statute, sufficiently states the offense in the indictment.

(Syllabus by the Court.)

*Error from the District Court of Noble County; before B. F. Burwell, Trial Judge.*

*S. H. Harris,* for plaintiff in error.

*Horace Speed, U. S. Attorney,* for defendant in error.

STATEMENT OF FACTS.

The plaintiff in error, Asa C. Sharp, was indicted by the grand jury of Noble county, on December 6th, 1900. The indictment was as follows:

"At the December term of the district court of the fourth judicial district, in and for the county of Noble, and Territory of Oklahoma, sitting with the powers of a district court of the United States of America, and a circuit of the United States of America, begun and held at Perry, in said county and territory, on the 3rd day of December, in the year of our Lord, one thousand, nine hundred.

"The grand jurors of the United States of America, within and for said county, having been duly empaneled, sworn and charged to inquire into and true presentment make of all public offenses against the laws of the United States of America, committed or triable within said county, upon their oaths aforesaid, in the name and by the authority of the United States of America, do find and present:

"That on the eleventh day of February, in the year of our Lord, one thousand, eight hundred and ninety-eight, at and within the Ponca Indian reservation, which said reservation is under the exclusive jurisdiction of the United States, and is and was then attached to said county for judicial purposes, and within the jurisdiction of said court, Asa C. Sharp, then and there was an officer of the United States, to-wit: An Indian agent acting for and on behalf of the United States, and a person acting for and on behalf of the United States in his official capacity as such officer and as such person acting for and on behalf of the United States, under and by virtue of the authority of the office of commissioner of Indian affairs, of the government of the United States, and under and by virtue of the authority of the interior department of the government of the United States, and said Sharp as such officer and as such person, acting in his official capacity aforesaid, then and there had charge of the execution and com-

pletion of certain leases for certain tracts of land in the Ponca Indian reservation commonly known as the East Ponca pasture, and the West Ponca pasture, and also of certain other leases for four certain other tracts of land in the Otoe and Missouri Indian reservation, commonly known as· the west half of the West Otoe pasture, the east half ·of the West Otoe pasture, the west ten thousand acres of the East Otoe pasture, the east forty-three thousand acres of the East Otoe pasture, the execution and completion of which leases were then and there pending ·before him in his official capacity aforesaid, and in his place of trust as such officer and as such person acting for and on behalf of the United States under the authority aforesaid.

"And said Sharp, so acting as aforesaid, and·in the capacities aforesaid, and so having charge of the execution and completion of the leases as aforesaid, did then and there corruptly, unlawfully and feloniously ask, accept and receive money in the sum of to-wit, one thousand, five hundred dollars from Henry E. Asp, with intent to have his action upon the execution and completion of the leases aforesaid, influenced thereby.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"HORACE SPEED, United States Attorney.

"Second Count. * * And said Sharp, so acting as aforesaid under and by virtue of the authority of the office and department aforesaid, corruptly, unlawfully and feloniously, did then and there ask money in the sum of to-wit, two thousand dollars from W. F. Smith and Frank Witherspoon with intent to have his action upon the execution and completion of the leases aforesaid influenced thereby.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"HORACE SPEED, United States Attorney.

"Third Count.    *    *    And said Sharp, so acting as aforesaid, under and by virtue of the authority of the office and department aforesaid, then and there corruptly, unlawfully and feloniously did ask, accept and receive of and from one Charles H. Ogden, a certain promise for the payment of money in the sum of six thousand, five hundred dollars, with the intent then and there to have his action upon the execution and completion of the leases aforesaid influenced thereby.

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"HORACE SPEED, United States Attorney.'

. "Fourth Count.    *    *    And said Sharp, so acting as aforesaid, in the capacities aforesaid, under and by virtue of the authority of the office and department aforesaid, then and there corruptly, unlawfully and feloniously did ask, accept and receive of and from one Charles De Roberts a certain promise for the payment of money in the sum of six thousand, five hundred dollars with the intent then and there to have his action upon the execution and completion of the leases aforesaid influenced thereby. ·

"Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States of America.

"HORACE SPEED, United States Attorney."

Upon arraignment to this indictment, the defendant filed a motion to correct the journal of the court with reference to the drawing and empaneling of the grand jury which appears on pages 11 to 14 of case-made, and which states in substance that the journal of the clerk shows the discharge of certain grand jurors for legal cause, when in fact they were peremptorily challenged by the United States attorney and dismissed by the court without cause. Upon the hearing

of this motion which was duly verified, constituting part of the evidence upon the hearing, the court sustained the motion, and made the following order and journal entry thereon:

"In the District Court of Noble County, Territory of Oklahoma, sitting with the powers and jurisdiction of a district court of the United States and a circuit court of the United States.

"*United States of America, Plaintiff, v. Asa C. Sharp, Defendant.*

"ORDER TO CORRECT RECORD.

"Now on this 16th day of May, A. D. 1901, the same being a judicial day of the regular May A. D. 1901, term of the above entitled court, the above entitled cause comes on for hearing upon motion of the defendant to correct the journal entry of the empaneling of the grand jury for the reasons set forth in said motion, which grand jury returned the indictment herein, the United States appearing by Hon. Horace Speed, United States attorney, and the defendant, Asa C. Sharp, appearing in person in open court, and by his attorneys Judge Henry W. Scott, S. H. Harris and Judge A. G. C. Bierer, and after hearing the evidence offered in support of said motion, and the argument of counsel and being fully advised in the premises the court finds that said motion should be sustained in part and that the journal referred thereto therein should be corrected in the parts referred to in said motion, and in reference to the grand juror, John Benson, said journal should read as follows:

" 'Whereupon, the Honorable Horace Speed, United States attorney, suggested and requested the court to excuse John Benson, which request was granted, and the court excused the said John Benson for the reason that the court believed from the evidence that the said John Benson was not a fit and competent person to serve as a grand juror for said term of court, and which was disclosed from the evi-

dence, and which is the evidence disclosed here upon this application to correct the journal entry.' That in reference to the grand juror, E. R. Baker, the said journal shall read as follows:

" 'Whereupon the Honorable Horace Speed, United States attorney, suggested and requested the court to excuse E. R. Baker, which request was granted, and the court excused the said E. R. Baker, for the reason that the court believed from the evidence that the said E. R. Baker was not a fit and competent person to serve as a grand juror for said term of court, and which was disclosed from the evidence, and which is the evidence disclosed here upon this application to correct the journal entry.

"Bayard T. Hainer, Judge."

After the correction of the journal aforesaid, the defendant filed his motion to set aside the indictment, which motion was for the following reasons:

"First. That the judges of election who returned the grand jurors, were not sworn to select and return grand jurors, and the names were not returned under the oath and obligation of the judges of election of the various precincts of the county.

"Second. That there were 2,240 votes cast in the county at the last general election, and that the 350 names required for the jury box would make 6 14-35 of population for each juror; that the county clerk at the last preceding election intentionally directed the judges of election of Billings precinct not to return any jurors, and intentionally directed a return of twenty-one jurors from the second ward of the city of Perry, where 250 votes had been cast in the general election preceding, and that he intentionally directed the judges to return twenty-one jurors from Glenrose township, where only one hundred votes had been cast at the last election, and that the clerk intentionally directed the judges of election of Oak-

dale township to return eighteen jurors, where 132 votes had been cast at the last general election.

"Third. That on the 19th day of November, prior to the convening of the December term, 1900, which began on December 3, the judge of the district court of Noble county delivered to the clerk an order in writing directing the drawing of twenty grand jurors for the term, and afterwards telegraphed the clerk from Guthrie to draw twenty-four grand jurors, and the clerk thereupon changed the order which had been signed by the judge, and made it read twenty-four instead of twenty grand jurors, and twenty-four grand jurors were drawn and summoned.

"Fourth. That several grand jurors who had been drawn and summoned were not empaneled, and no effort was made to produce them in court, and no evidence taken from which it could be determined that they were lawfully away from court, and that it was necessary to empanel other grand jurors in their stead; and that other grand jurors drawn and selected and not of the first sixteen drawn from the box, were placed upon the grand jury and served thereon during the finding of the indictment in question.

"Fifth. That four grand jurors were excused upon peremptory challenge by the United States attorney without any legal cause or excuse therefor, two of them being challenged and excused on the ground that they had served upon a jury in the county within the past two years, and the other two were excused upon peremptory challenge, as shown in the hearing upon motion to correct the journal. The places of the jurors belonging to the sixteen drawn for the grand jury, and which were challenged by the United States attorney, were filled by other members of the twenty-four drawn as the grand jury, and that the grand jurors were not placed in the box and required to serve, when found competent, and in the order in which they were drawn from the jury box.

"Sixth. That there was no legal and competent evidence submitted to the grand jury after it was empaneled to warrant the indictment returned upon either or all of the counts thereof."

This motion was by the court overruled. Exceptions saved by the defendant. After the deciding of this motion the defendant filed a demurrer to each and every count of the indictment. Which demurrer was overruled. Exception saved by defendant. Trial was had on the 8th day of July, 1901, resulting in a verdict of conviction, on the first and second counts of the indictment. Motions for new trial and in arrest of judgment were filed and overruled, said ruling excepted to by the defendant, and the case brought here for review.

Opinion of the court by

IRWIN J.: While there are several assignments of error by the appellant, we think it will be necessary to notice but two. First. It is contended that the statutes of the territory in reference to the drawing and empaneling of grand jurors is mandatory, and that all of its provisions must be substantially complied with in order to constitute a legal jury, and that the drawing and empaneling of the grand jury in question was not in either substantial or exact compliance with the law. We have examined this record carefully, and think this contention is not tenable. In the case of *Francis D. Malignon v. The Territory of Oklahoma,* filed August 24th, 1899, and reported in the 8th Okla. page 439, this court laid down the rule as follows:

"In the absence of any suggestion or showing that the failure to comply with the statutory requirements in regard.

34—Vol 13

to drawing jurors has injuriously affected the substantial rights of the defendant, this court will not reverse the action of the trial court in overruling a challenge to the array, founded upon such grounds."

And substantially the same doctrine was enunciated by this court in the case of *Huntley v. The Territory,* 7th, Okla. p. 60, and in the case of *Queenan v. Territory,* 11th, Oklahoma, p. 262, which case was affirmed by the U. S. supreme court (190 U. S., p. 548;) and we think these decisions lay down the true rule, and are the law of this territory in regard to the subject, and on the authority of these cases, and the cases therein cited, we think there is nothing in the contention of plaintiff in error as to this proposition.

The next proposition urged for a reversal of this case is:

"That neither count of the indictment states facts sufficient to constitute a cause of action, for the reason that neither count relates to any act or transaction on the part of plaintiff in error as Indian agent which constitute a part of his official power and authority, under the law as here quoted, and because neither count sets forth with sufficient certainty the facts and circumstances constituting the offense sought to be charged."

The indictment in this case is under section 5501 of the revised statutes of the United States, which provides:

"Every officer of the United States, and every person acting for or on behalf of the United States in any official capacity, under or by virtue of the authority of any department or office of the government  *  *  who asks, accepts or receives any money, or any contract, promise, undertaking, obligation, gratuity or security, for the payment of money, or for the delivery or conveyance of any thing of value, with the intent to have his decision or action on any question, mat-

ter, cause or proceeding, which may at any time be pending, or which may be by law brought before him, in his official capacity, or in his place of trust or profit, influenced thereby shall be punished   *  *  *."

This indictment in the first count, charges, among other things, that Asa C. Sharp, the defendant, then and there was an officer of the United States, to-wit, an Indian agent, acting for and on behalf of the United States, and as such officer, the said Sharp, in the capacity aforesaid, having charge of the execution and completion of leases of certain Indian lands, did then and there corruptly, unlawfully and feloniously, ask, accept and receive a bribe from one Henry E. Asp, with intent to have his action on the execution and completion of the leases aforesaid, influenced thereby.

The first question to be considered is, "Is an Indian agent a United States officer?" Section 2058 of the revised statutes of the United States defines the duties of an Indian agent as follows:

"Each Indian agent shall within his agency manage and superintend the intercourse with the Indians agreeably to law; and execute and perform such regulations and duties, not inconsistent with the law, as may be prescribed by the president, the secretary of the interior, commissioner of Indian affairs, or the superintendent of Indian affairs."

Section 463. "The commissioner of Indian affairs shall, under the direction of the secretary of the interior, and agreeably to such regulations as the president may prescribe, have the management of all Indian affairs, and of all matters arising out of Indian relations."

It is apparent that the Indian agent is but a subordinate branch of that department of the government in charge of

the Indian affairs. That he is under the direction and control·of the president, secretary of the interior, and other officers of such department, and it seems to us that it must be apparent that such an agent, appointed by the president, and under the constant orders of the secretary of the interior and the commissioner of Indian affairs, is a government officer. But, it is contended by the counsel for the plaintiff in error that he was not a government officer, and was not acting as the agent of the government but as the agent of the Indians. It seems to us that he could not be considered the agent of the Indians, for the reason that he was controlled by another power, superior to both him and the Indians. His directions come from the government; he acts as an officer to carry out the affairs of the government in reference to Indian lands, and in the execution of these leases he was simply an officer of the government who carried out the affairs of the government, and his only duties, other than as an executive officer was to advise with the Indian department as to the best method to be adopted, and as to the best policy to pursue as to the making of these leases.

The next argument of the defendant is that this indictment does not charge the offenses with sufficient certainty, to constitute a public offense for the reason that the land to be leased is not described, or the number of the lease or the name of the lessee, or the quantity of each or the form and number of the lease or the condition of the contract. We have examined this indictment and we think it is drawn substantially in the language of the statute, and this has been repeatedly held to be sufficient.

In Hughes' Criminal Law and Procedure, page 392, article 1509, the author lays down the rule:

"Charging the offense of bribery substantially in the language of the statute defining it, sufficiently states the offense in the indictment or information."

As authority for this proposition are cited *People v. Edson*, 68 Cal. 549; *State v. McDonald*, 106 Ind. 233; *State v. McCrystol*, 43 La. 907.

In *Commonwealth v. Lapham*, 156 Mass. 480, the matter about which the bribe was given is described as follows: "Certain specimens of milk then and there being, in the custody and possession of one A. B.," and this was held to be sufficient.

In the case of *Glover v. The State*, 109 Ind. 391, the subject-matter of the bribery was described as "Certain School Furniture."

In the case of *Walsh v. People*, 65 Ill. 58, the description was "Certain Real Estate."

In the United States v. Boyer, 85 Fed. Rep. 427, the subject-matter was described as "Certain carcasses of cattle at the packing house of the said Jacob Dold Packing Company which had been condemned."

In all of these cases the indictments were held to be sufficient.

In the indictment in the case at bar the description of the leases were:

"Certain leases for certain tracts of land in the Ponca Indian reservation commonly known as the East Ponca Pasture, and the West Ponca Pasture, and also of certain other leases for four certain other tracts of land in the Otoe and Missouri Indian reservation, commonly known as the west half of the West Otoe Pasture, the east half of the West Otoe pasture, the west ten thousand acres of the East Otoe pasture,

We think the description of the leases described in the indictment in the case at bar is much 'more full and complete than those referred to in the authorities cited, and we think the indictment describes the leases with sufficient certainty to apprise the defendant of the offense with which he is charged.

Hence, we think that the action of the court in overruling the motion to set aside the indictment and in overruling the motion for a new trial, and the pronouncing of sentence on the verdict of the jury was sustained by the law and the evidence.

For these reasons the action of the lower court is affirmed.

Burwell, J., who presided in the court below, not sitting; Hainer, J., having taken some part in this case in the district court, not sitting; all the other Justices concurring.