## D. H. MIDDLETON v. STATE.

No. A-2333—Opinion Filed Aug. 30, 1919.

(183 Pac. 626.)

1.    **GRAND JURY—Selection by Jury Commissioners—Power of Superior Court—Statute.** When it is required to impanel a grand jury, and there is not a sufficient number of names in the jury

box of the court from which to draw such grand jury, a superior court has jurisdiction to order the jury commissioners to convene and select 30 names, to be placed in the jury box, from which to draw and select a grand jury.

2. **GRAND JURY—Selection and Impaneling—Statute.** The law of this state in regard to selecting, summoning, and impaneling a grand jury is directory, and a substantial compliance therewith is sufficient.

3. **GRAND JURY—Presence of Unauthorized Person—Validity of Indictment—Statutes.** The presence of an unauthorized person in the grand jury room while testimony is being taken, and not while the grand jury is deliberating or voting upon an indictment, will not invalidate an indictment, unless it is reasonably probable that the accused was thereby prejudiced in some substantial right.

4. **SAME—Action of County Attorney—Misconduct of Jury.** A grand jury became dissatisfied with the county attorney and his assistants, and sought to have the county attorney remove one of his assistants and appoint in his stead a designated person, and, upon the county attorney refusing so to do, made a report to the court asking its assistance to cause the county attorney to comply with their demand, which the court refused to do, and thereafter caused a complaint against the county attorney to be drafted, but which was not presented to the court, but came to the knowledge of the county attorney, and thereafter the county attorney, upon promise of reappointment when the grand jury adjourned sine die, secured the resignation of one of his assistants, and nominated and appointed another person as assistant to fill the vacancy caused by said resignation, and the party so appointed as assistant county attorney took the oath of office, and appeared before the grand jury, and advised them as to the finding of an indictment, and the assistant county attorney so appointed filed with the county commissioners a claim for $500 for his said services before the grand jury, and subsequently withdrew such claim. Held that said action of the grand jury and of the county attorney did not constitute such misconduct as to constitute grounds for setting aside an indictment found by such grand jury.

5. **PROSECUTING ATTORNEYS — Grand Jury — Attendance By De Jure Assistant County Attorney—Validity of Appointment—Effect Upon Indictment.** Regardless of what pressure was brought upon the county attorney to cause him to secure the resignation of one of his assistants, and the appointment of another to fill such vacancy, the person so appointed, upon duly qualifying, is a **de jure** assistant county attorney, and may legally attend upon a grand jury and advise as to the finding of an indictment, and that the person appointed as such assistant county attorney filed with the county commissioners a claim for $500 for his said services before the grand jury did not render the ap-

pointment of such assistant county attorney void, and his attendance upon and advice to the grand jury in regard to finding an indictment did not constitute legal grounds for setting aside an indictment found by such grand jury.

6. **APPEAL AND ERROR—Right to Allege Error—Motion for Change of Venue.** Where two persons are jointly indicted and before a severance, a motion for a change of venue by one of them, in which the other does not join, is not a motion on the part of the other defendant; and, where such change of venue is denied, a severance had, and the defendant who did not join in said motion is separately tried, convicted, and appeals to this court, the overruling of such motion cannot be successfully assigned as error.

7. **ARRAIGNMENT, PLEAS, AND DISCONTINUANCE—Dismissal of Counts—Leave of Court.** Where an information or an indictment contains more than one count, the state may, before the jury is sworn, and by leave of the court, properly dismiss one or more of said counts, and try the defendant upon the remaining count or counts.

8 **APPEAL AND ERROR—Ruling on Demurrer to Count—Trial of Another Count—Review.** Where an information or an indictment containing two counts is demurred to, the demurrer overruled, and thereafter the state dismisses one of said counts, it is entirely immaterial whether the court erred in overruling the demurrer to the count dismissed, and such question will not be reviewed by this court.

9. **EMBEZZLEMENT—Indictment and Information—Single Offense —Sufficiency.** The count of the indictment upon which the defendant was tried, held to charge but one offense, and to sufficiently inform the defendant of the particular offense he was called upon to answer.

10. **JURY—Challenge for Cause—Doubt—Ruling.** Upon the examination of a juror as to his qualifications when challenged for cause by the defendant, the court should resolve all doubts arising under the evidence in favor of the defendant as to the competency of the juror; and if, upon so doing, it appears that the juror challenged for cause would not be an impartial juror as required by the decisions of this court, such challenge should be sustained.

11. **APPEAL AND ERROR—Reversible Error—Challenge for Cause— Ruling.** Where the defendant has exhausted his peremptory challenges, it is reversible error for the court to overrule a challenge for cause, when the examination of such juror, resolving all doubt in the evidence in favor of the defendant, shows that the juror is not impartial.

12. **TRIAL—Requested Charge—Given Charge.** Several requested instructions, which cover but one legal proposition, which is in effect given in the general charge, are properly refused

13. **EMBEZZLEMENT—Presence of Defendant—Charge.** A requested instruction which requires, as essential to conviction, the presence of the defendant when aiding, abetting, or advising the embezzlement charged, is properly refused.

14. **APPEAL AND ERROR—Charge—Reversible Error — Other Charges.** A paragraph in the general instructions which does not technically state the law correctly, authorizing conviction if D. H. Middleton was directly or indirectly concerned in the commission of the acts constituting the offense as alleged in the indictment, does not necessarily constitute reversible error, if other instructions given clearly overcome the objection complained of.

*Appeal from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

D. H. Middleton was convicted of embezzlement, and he appeals. Reversed and remanded.

*Ames, Chambers, Lowe & Richardson, S. M. Rutherford,* and *W. W. Noffsinger,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State

ARMSTRONG, J. Plaintiff in error, D. H. Middleton, hereinafter designated defendant, was jointly indicted with W. H. Wainwright, a severance demanded and granted, and defendant separately tried, convicted, and sentenced to imprisonment in the penitentiary at hard labor for a term of three years, and to pay a fine of $8,000 and costs of this prosecution. To reverse the judgment rendered, he prosecutes this appeal.

On the 2d day of January, 1914, the defendant filed a motion to set aside the indictment in the case upon the following grounds:

"First. The grand jury which returned the indictment herein against this defendant was not drawn and impaneled as provided by law.

"Second. Misconduct of the grand jury which returned the indictment.

"Third. Misconduct on the part of the county attorney and grand jury to the prejudice and injury of this defendant in preferring charges herein and in returning the indictment in this case."

In support of the first ground of said motion, the defendant introduced evidence that on the 10th day of November, 1913, the court certified that a grand jury was required for the November term of the court, and, it being made to appear that an insufficient number of names were in the jury box from which to draw a grand jury, the court ordered "that the jury commissioners be summoned to meet for the purpose of selecting 30 names to be placed in the jury box according to law"; that on November 13th the court convened in due form of law, and the jury commissioners of Muskogee county having returned to the clerk of this court the names of 30 persons eligible for jury service, properly certified, it was ordered by the court that the clerk of this court remove from the jury box of this court all the names in said box, and record the names of the said 30 persons, certified by said jury commissioners, on slips of paper of uniform size and color, in the presence of the sheriff of Muskogee county, and to deposit the names as returned by said jury commissioners in said jury box, and that the clerk of the court issue a summons to the sheriff of Muskogee county to forthwith assist him in drawing the names of 24 persons from the jury box of this court for service as grand jurors on the 24th day of November, 1913, and to issue a summons to each of said persons and a venire as required by law, and place the same in the hands of the sheriff of this county for service; that on the 24th day of November, 1913, the court having again convened in due form of law, the clerk presented to the court the names of 24 persons drawn and summoned in

serve as grand jurors on the 24th day of November, 1913, and that 12 of the persons so drawn and summoned were selected to compose, and were sworn and impaneled as a grand jury, J. L. Harvice being appointed and sworn as foreman, and, after being instructed by the court, retired, in charge of a bailiff, to consider of their presentments, and thereafter returned into court the indictment sought to be set aside.

In support of the second ground of said motion defendant introduced evidence tending to show that the grand jury, for the purpose of securing the advice of one Wyand, who was an attorney practicing in the city of Muskogee, had him summoned before them as a witness, and advised with him as to a legal way of securing legal advice other than by the county attorney and his assistant, and caused him to draw up a purported proceeding against the county attorney for his refusal to comply with the repeated requests of the grand jury for other legal assistance in their investigations; but which said proceeding was never filed in said court, but was known to the county attorney; and introduced a special report of the grand jury made to the court, setting up—

"that in order that the best interests of all the people may be served, and no injustice done any one, we are firmly convinced that it would be to the best interest of our citizens and county that our honorable county commissioners do employ additional legal service to assist us and our most worthy county attorney, W. E. Disney, in a thorough investigation of all matters that may come before us; and whereas, the county commissioners did pass a resolution appropriating $500 to pay for such additional legal service, and did employ Bailey & Wyand, to be most effective, it would be legally necessary for the said county attorney to discharge one of his present assistants, and in his stead

appoint Mr. Wyand as assistant county attorney, which the said county attorney refused to do; and whereas, the said grand jury now in session have repeatedly and do demand of the said county attorney to recognize the said resolution of our said county commissioners as passed, appropriating the said sum necessary to employ said Bailey & Wyand to assist in said legal services, and to discharge one of his assistants, and appoint J. E. Wyand in his stead during the term of our session, which the said county attorney has and does refuse to do, and prayed the court to give us the relief sought."

Upon the appearance of the grand jury in open court in connection with said report the court stated that he had exercised all the influence and power he had as an individual in endeavoring to prevail upon the county attorney to accede to their request, that he had made every argument he could make, and listened to every argument that the county attorney could advance on his side, and was still of the opinion that the request is not unreasonable; but that it was a matter that the county attorney, under the laws of the state, alone could determine, and that there was no power that he knew of that could take the power from him, and that, if he continued of the opinion he then adhered to, the court did "not see that you have any remedy," and regretted that he (the court) had not been able to render them any further assistance.

In support of the third ground of said motion the defendant introduced evidence tending to show that by reason of the pressure brought upon the county attorney, including threats of the grand jury to proceed against him, the county attorney notified the grand jury that he would appoint another assistant county attorney to attend the grand jury, and, in order to do so, he caused one of his assistants, with the understanding that when the grand

jury had completed its labors he would be reappointed, and in the interval would be paid as a clerk in the county attorney's office, to resign, and B. B. Blakeney to be appointed as one of his assistants; that the resignation of the said assistant, and the nomination of said Blakeley as an assistant, were duly filed with the county commissioners, and B. B. Blakeney, duly appointed as such assistant, took the oath of office as such, appeared before the grand jury, and advised them in regard to finding the indictment filed in this case; that said Blakeney, filed with the county commissioners a claim for $500 for his services in connection with said grand jury, and, fearing that he would thus violate the criminal law, withdrew said claim.

The defendant also introduced evidence that the county attorney and his assistants were not physically, mentally, or morally incapacitated from performing the duties devolving upon them, and were capable, willing, and ready to serve the grand jury.

The defendant also introduced in evidence the instructions given said grand jury by the court, which we deem unnecessary to recite. Attorneys for W. H. Wainwright appeared and excepted to the charge of the court to the grand jury.

The court overruled the motion to set aside the indictment, and to said action of the court the defendant excepted.

The indictments in this case originally contained two counts; but prior to the swearing of the jury the state dismissed the second count, and stood upon the first count, which, omitting caption and signature, is as follows:

"The grand jurors, duly selected, summoned, chosen, impaneled, sworn, and charged at the November term

aforesaid of said superior court within and for the body of Muskogee county, state of Oklahoma, to inquire into and true presentment make of all public offenses against the state of Oklahoma committed and triable within the county of Muskogee, in said state, in the name and by the authority of the state of Oklahoma, upon their oaths present, find, and charge:

"That one W. H. Wainwright and D. H. Middleton, in the county of Muskogee, state of Oklahoma, on or about the 9th day of October, in the year of our Lord one thousand nine hundred and thirteen, and anterior to the presentment hereof, did commit the crime of embezzlement of public money in the manner and form as follows, to wit: That the said W. H. Wainwright, in the county and state aforesaid, on or about the said 9th day of October, A. D. 1913, was duly elected, qualified, and acting county treasurer of Muskogee county, Oklahoma, and as such county treasurer of Muskogee county, Oklahoma, was charged and intrusted with the collection, receipt, safekeeping, transfer, and disbursement of public money, and other funds, property, bonds, securities, assets, and effects, all belonging to and being the property of the state of Oklahoma, and the county of Muskogee in said state, and to various precincts, cities, towns, and school districts of said county and state, and to the people thereof, and to divers other persons, firms, and corporations to the grand jurors unknown; that the said W. H. Wainwright, as such county treasurer, so acting, charged, and intrusted as aforesaid, was intrusted and charged with, and did, in the county of Muskogee and state of Oklahoma, on or about the 9th day of October, 1913, receive, have, and hold in his possession and under his control by virtue of his said office and public trust as such county treasurer of Muskogee county, Oklahoma, and for the purposes aforesaid, certain public money, and other funds, property, bonds, securities, assets, and effects by him received and collected as county treasurer from the various sources of revenue and taxation, provided by law, and by him as county treasurer controlled and held for

and received for the state of Oklahoma and the county of Muskogee, and the various precincts, cities, towns, and school districts thereof, and the people thereof, and divers other persons, firms, and corporations to the grand jurors unknown, in large sums, but the exact amount of said public money, funds, property, bonds, securities, assets, and effects, so received, had, and held and controlled by W. H. Wainwright as county treasurer being to the grand jurors unknown; that the said W. H. Wainwright, while then and there in Muskogee county, Oklahoma, on the 9th day of October, 1913, so acting in said office of such county treasurer, and so charged and intrusted with the control, disbursement, receipt, safekeeping, and transfer of said public money, funds, property, securities, assets, bonds, and effects aforesaid, and being in possession of the same by virtue of his office and public trust as county treasurer of Muskogee county, state of Oklahoma, did then and there unlawfully, willfully, wrongfully, designedly, fraudulently, stealthily, corruptly, and feloniously, and without authority of law, and not in the due and lawful execution of his trust as county treasurer of Muskogee county, Oklahoma, take, steal, carry away, and embezzle, convert, and appropriate to his own use and benefit, and to a use and purpose not in the due and lawful execution of his said trust as county treasurer of Muskogee county, Oklahoma, and to the use of other persons, bodies corporate, and associates to the grand jurors unknown, a part of said public money, and other funds, property, bonds, securities, assets, and effects received, controlled, and held by and intrusted and charged to him, W. H, Wainwright, as county treasurer, and by virtue of his public office and trust as aforesaid, to wit, the sum of and to the amount of and of the value of four thousand dollars ($4,000.00) of the public money and other funds, property, bonds, securities, assets, and effects, collected, received, had, held, and controlled by him, the said W. H. Wainwright, by virtue of his office and public trust as county treasurer of Muskogee county, Oklahoma, a more particular description of which is to the grand jurors unknown; that the said D. H. Mid-

dleton, in Muskogee county, state of Oklahoma, on the 9th day of October, 1913, then and there before and during the commission of said fraudulent acts and embezzlement as aforesaid, did knowingly, willfully, unlawfully, wrongfully, designedly, corruptly, fraudulently, stealthily, and feloniously, and without authority of law, move, procure, aid, conceal, advise, abet, assist, and command and counsel said W. H. Wainwright to do and commit the said felony and embezzlement in the manner and form as aforesaid, and did otherwise, and in other manners to the grand jurors unknown, knowingly, willfully, unlawfully, fraudulently, and feloniously participate with the said W. H. Wainwright in said acts of embezzlement aforesaid, with the unlawful, fraudulent, and felonious intent and design then and there on the part of them, the said W. H. Wainwright and D. H. Middleton, to deprive the said state, county, and citizens aforesaid of said public money and other funds, property, bonds, securities, assets, and effects, and to convert the same to their own use and benefit, and to a use and purpose not in the due and lawful execution of the said trust as aforesaid.

"And so the grand jurors aforesaid, upon their oaths aforesaid, do present, find, and charge that W. H. Wainwright and D. H. Middleton, in Muskogee county and state of Oklahoma, did commit the crime of embezzlement of public money, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state of Oklahoma."

The defendant demurred to the indictment, and each count thereof, upon substantially the following grounds:

(1) That the indictment and each count thereof charges more than one offense.

(2) That the facts set forth in said indictment and in each count thereof do not constitute a public offense.

(3) That the indictment and each count thereof is so uncertain and indefinite that the defendants cannot tell with what offense they are attempted to be charged.

(4) That said indictment and each count thereof fails to state facts to charge the offense of embezzlement.

The court overruled the demurrer, and the defendant excepted.

Thereupon the defendant filed a motion for a change of judge, and a motion for a transfer of the case to the district court of Muskogee county, which said motions it is deemed unnecessary to set out. The court overruled each of said motions, and the defendant duly excepted. The defendant then granted a severance, which was granted, and the state elected to try the defendant W. H. Wainwright first.

The trial of the defendant Middleton having been entered upon, the following proceedings, so far as necessary to be stated in reviewing this case, in the selection of the jury, were had. W. H. Keaton on his *voir dire* testified that he did not know Middleton; that he knew Wainwright when he saw him; that he had read some in the papers in reference to D. H. Middleton's connection with the charge, which caused him to form an opinion to some extent as to his guilt or innocence; that he thought it would take evidence to remove this impression; that he had heard the result of Wainwright's trial the week before; that he could not say that he had an opinion or impression as to the guilt or innocence of Wainwright as to this charge of embezzling $4,000; that he had no general opinion affecting any charge other than that he was tried for the week before, and that he had an opinion as to that one; he thought he could go into the jury box and give both sides a fair and impartial trial as if he had not heard of that result; that he knew of no good reason why he could not go into the jury box and be a fair and impartial juror.

On cross-examination he testified that he had heard discussed and had seen notices in the newspapers concerning Wainwright's shortage in the treasurer's office, and that from what he had heard discussed he had formed an opinion in regard to his guilt or innocence, and had that opinion yet; that if it would require the same evidence in this case which it would in the other he had an opinion as to the guilt or innocence of Wainwright which would require evidence to remove, and that he would go into the jury box with that impression; that it would require evidence to clear up his mind so he could take hold of any new evidence in regard to Wainwright; that he had a general opinion in regard to the defalcation in the treasurer's office; that there was a shortage; that he did not hear the evidence in the other case, and did not know the specific item in the other case; and his opinion was that Wainwright was a defaulter in the treasurer's office, and if the evidence in this case would sustain that general opinion he would have a fixed opinion, and he would not go into the jury box free and untrammeled; that he could not remove that unless the evidence was strong enough to eradicate it.

In response to a question by the court the juror answered that he could not say he had any opinion as to the guilt or innocence of W. H. Wainwright as to any shortage in the treasurer's office other than the shortage for which he was tried.

**The defendant challenged the juror for cause,** the court overruled the challenge, and the defendant excepted.

W. H. Westlake on his *voir dire* testified that he did not know Wainwright personally; that he had known him about five years when he saw him; that he had not from

any source formed or expressed an opinion as to the guilt or innocence in this particular instance of the alleged embezzlement of $4,000 on October 9th; that naturally he would have an opinion of Mr. Wainwright's guilt or innocence in the case that had already been tried; that he had heard about it since it had been tried; that it had not produced in his mind any impression as to his guilt or innocence in this case.

On cross-examination the juror testified that he was examined as a juror in the Wainwright case, and challenged by the defendant; that he naturally had an opinion of the guilt or innocence of Wainwright of embezzlement as to the case just tried; that he had heard about the case since it was tried; that it had not produced in his mind an impression as to the guilt or innocence of the particular charge in the indictment on trial; that he believed he could go into the jury box and give both sides a fair and impartial trial as if he had not heard the outcome of the trial of Wainwright the week before, and, if selected as a juror, would do so, and that he knew of no reason why he could not do so.

On cross-examination this juror testified that if the transaction in this and in the Wainwright case were one and the same he would have an opinion as to the guilt or innocence of Wainwright; that he would naturally go into the jury box believing he was guilty, or they would not have found him guilty, and he supposed it would to some extent require evidence to remove that impression; that he could not say that he had an impression on his mind then as to the guilt or innocence of Wainwright; that emphatically he had an opinion as to his guilt or innocence in that one case; that it was a fixed opinion, and would require evidence to remove it.

The defendant challenged the juror for cause, the court overruled the challenge, and the defendant excepted.

Fritz Haand on his *voir dire* testified that he did not know D. H. Middleton; had not heard of this case before; had not formed or expressed an opinion as to his guilt or innocence of this charge; that he learned of the result of the trial of W. H. Wainwright last week; had not heard this case discussed; that he had no opinion of Wainwright's guilt before the verdict; knew nothing about what the facts were or purported to be about the case on call, alleging the embezzlement of $4,000 on the 9th of October before; never heard it talked about nor saw any special reference to it in the newspapers; that he based what opinion he had on the verdict.

This juror testified that he thought he could go into the jury box and try this case free from any opinion as to whether or not Wainwright was generally guilty of the shortage that was charged against him in the treasurer's office.

On cross-examination this juror testified that he did not read the Muskogee or his town papers; that he had heard the shortage discussed; that if Wainwright was tried for the alleged shortage that was reported, he had an opinion as to his general guilt, and that he was responsible for the shortage, that it would take evidence to remove, and that, regardless of this case or any other, he certainly had that opinion; that it was a fixed and abiding opinion that would take evidence to remove.

On redirect examination this juror testified that he did not know what case Wainwright was tried on, but knew he was tried for embezzlement of county funds; that if he was charged with embezzling the funds re-

ported to be short and discussed by the people, he had an opinion as to his guilt or innocence of the general shortage that was reported in the treasury office.

In response to a question by the court, the juror testified that he had no opinion as to whether or not there was any other shortage in the treasurer's office other than the one Wainwright was tried upon.

The defendant having exhausted his peremptory challenges, W. H. Westlake, W. H. Keaton, and Fritz Haand, each of whom was challenged by the defendant for cause, and each of which challenges was overruled by the court, served upon the jury which returned the verdict of guilty in this case.

In view of the fact that the evidence in this case covers over 1,000 pages of typewritten matter, and would, without accomplishing any good purpose, unnecessarily extend this opinion, we think it unnecessary to set out an abridgment of the same, and especially so since counsel have failed to comply with the rules of the court in this respect.

The defendant requested the court to give the jury the following instructions, viz:

"(1) The court instructs the jury that, in order to constitute the defendant a party to the crime charged in the indictment, it is necessary that the defendant be concerned in the commission of the offense—that is, that he either commits it or aids in the commission—and it is not sufficient that he merely acquiesced therein."

"(3) Gentlemen of the jury, you are instructed that if you should believe from the evidence that the public moneys of Muskogee county and the several municipal townships were embezzled at the time and place and in the manner alleged in the indictment, and if you further be-

lieve that W. H. Wainwright acted as principal in committing said embezzlement, if any was committed, then I instruct you that you cannot convict the defendant D. H. Middleton unless you further believe beyond a reasonable doubt that the defendant D. H. Middleton was present and knew the unlawful intent of Wainwright, and aided and encouraged and advised him by some word or act or agreed with him to commit such embezzlement."

"(7) The court instructs the jury that a mere mental assent or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, or took no part therein, gave no counsel, or uttered no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such person a party to the crime.

"(8) The court instructs the jury that a mere mental assent or acquiescence in the commission of a crime by one who did not procure or advise its perpetration, or took no part therein, gave no counsel, or uttered no word of encouragement to the perpetrator, however wrong morally, does not in law constitute such a person a party to the crime; and in this case the court instructs you that even though you should find that the defendant had knowledge of, and acquiesced in, the acts of his codefendant, W. H. Wainwright, which are charged to constitute embezzlement, that of itself would not be sufficient to find the defendant guilty."

The court refused to give each of said requested instructions, and the defendant separately excepted to the said action of the court.

The court, among other instructions, gave the jury the following instructions, to which the defendant separately excepted, viz:

"You are further instructed that under the laws of the state of Oklahoma, that all persons concerned in the

commission of any felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present, are principals; and in this connection you are instructed that if you should find beyond a reasonable doubt that D. H. Middleton did unlawfully, feloniously, fraudulently, and knowingly aid and abet, or did unlawfully, feloniously, fraudulently, and knowingly participate with the said W. H. Wainwright, in the commission of embezzlement as alleged in the indictment, then and in that event you should find the defendant guilty. Otherwise, if you entertain a reasonable doubt as to whether the said D. H. Middleton did knowingly, unlawfully, fraudulently, and feloniously aid or abet or participate with the said W. H. Wainwright in the commission of the embezzlements alleged in the indictment, then and in that event you should acquit him.

"G. You are instructed that if you should find from the evidence beyond a reasonable doubt that D. H. Middleton directly or indirectly was concerned in the commission of the acts constituting the offense as alleged in the indictment, he would be under the law charged as a principal as to the offense, whether he, or Wainwright, or others, as alleged in the indictment, enjoyed the benefits of the moneys alleged to have been embezzled or not."

Timely motions were made in arrest of judgment, and for a new trial, each of which said motions was overruled by the court, and separate exceptions saved.

The defendant most earnestly insists that the court committed reversible error in overruling the motion to set aside the indictment in this case upon the grounds:

"(1) That the court was without authority to make the order made convening the jury commissioners to select thirty names to be placed in the jury box from which to draw twenty-four names from which to select a grand jury."

"(2) On account of the misconduct of the grand jury and the county selector."

Section 1802, Rev. Laws 1910, provides:

That "the procedure in (superior courts) shall follow the procedure provided for the district court, * * * and all laws relative to juries and jurors for district courts shall be and hereby are made applicable to the said superior courts."

Section 1798, Rev. Laws 1910, provides:

That superior courts "shall have and exercise concurrent jurisdiction with the district court in all proceedings, causes or matters."

Section 3690, Rev. Laws 1910, provides that the jury commissioners shall convene at stated times, "and at such other times as the district judge may order."

Section 3692, Rev. Laws 1910, provides:

That "additional and other drawing of as many names as the court may order may be had at such time as the court may order * * * for the impaneling of a new grand or petit jury, * * * if, in the judgment of the court, the same shall be necessary, or, if, for any cause, the court * * * shall deem other jurors necessary."

Hence, it appearing to the court that a grand jury was necessary, and it further appearing that there was an insufficient number of names in the jury box from which to draw a grand jury, the court had authority to make the order directing the jury commissioners to convene, and also directing them to place in the jury box the number of names directed by him, and the law requiring the jury commissioners to place in the jury box not less than 200 names only applied to the statutory times for

preparing the jury boxes, and has no application in the instant case; and the court, in ordering the jury commissioners to convene and place in the jury box 30 names of qualified jurors from which to draw 24 names from which to select a grand jury, did not violate any substantial rights of the defendant.

The provisions of the statute in regard to the mode of obtaining juries are directory, and a substantial compliance with the requirements of the law is sufficient. This court will not reverse a ruling of a district court overruling a challenge to the array upon objection to the manner in which the list of jurors from whom the panel was selected was made up when such objections are purely technical, and do not affect the substantial rights of the parties, and when it is not made to appear that any material rights have been lost thereby. *Malignon v. Territory,* 8 Okla. 439, 58 Pac. 505.

"The provisions of the statute in regard to the mode of obtaining jurors are directory, and a substantial compliance with the requirements of the law is sufficient. The court will not reverse the ruling of the district court overruling a motion to set aside an indictment on the grounds that the grand jury were not chosen, selected, and drawn according to the provisions of the statute, and overruling an objection to the manner in which the list of persons from which the panel was selected was made up, when such objections are purely technical, and do not affect the substantial rights of the parties, and when it does not appear that any material right has been lost thereby." *Sharp v. United States,* 13 Okla. 522, 76 Pac. 177.

The rule announced in *Malignon v. Territory,* supra, and *Sharp v. United States,* supra, has been approved by this court in *Hopkins v. State,* 4 Okla. Cr. 194, 108 Pac. 420, 111 Pac. 947; *Wells v. State,* 5 Okla. Cr. 22, 113 Pac.

210; *State v. Pollock,* 5 Okla. Cr. 26, 113 Pac. 207; *Tegeler v. State,* 9 Okla. Cr. 139, 130 Pac. 1165.

The reason of the said statutory rule established by the Supreme Court of Oklahoma, and by this court, is expressed in R. C. L. vol. 12, pp. 1016, 1017, as follows:

"The reason of this rule is that as the grand jurors do not try the case, but merely charge the accused, the names of these selectors is of no consequence to him, he being entitled to claim only fair and impartial grand jurors who possess the necessary qualifications, whereas it is of great consequence that the administration of justice shall not be delayed by mere technical objections."

The record in this case shows that not even technical errors were committed, but that the statutes of this state governing the selecting, drawing, and impaneling of the grand jury finding the indictment in this case were strictly complied with.

We do not agree with the suggestion of the defendant that to uphold the procedure followed for obtaining the grand jury presenting the indictment in this case offers an opportunity for packing the grand jury. However, we are not empowered to change the law, and if a change of the law be desirable—which we do not even intimate—this rests with the Legislature. We can only apply the law as we find it. In the absence of any evidence in the instant case of any irregularity in drawing, summoning, or impaneling the grand jury that results "in depriving the defendant of a substantial right, or was reasonably calculated so to do, we conclude that the court did not err in overruling the motion to set aside the indictment on the ground of alleged irregularities in summoning the grand jury. Section 3701, Revised Laws 1910; *Wadsworth v. State,* 9 Okla. Cr. 84, 130 Pac. 808.

In *Tegeler v. State, supra,* it is held:

"A substantial compliance with the law in the matter of selecting, summoning, and impaneling grand jurors is all the law requires."

The defendant also insists that the presence of Mr. Wyand in the jury room, ostensibly as a witness, but in fact as a legal adviser of the grand jury, was sufficient ground for setting aside the indictment in this case.

In *Fooshee v. State,* 3 Okla. Cr. 666, 108 Pac. 554, Judge Richardson, now counsel for the defendant, speaking for this court, says:

"Furthermore our statute makes provision for setting aside an indictment on account of the presence of an unauthorized person before the grand jury only when such person was present when the jury were voting upon the question of returning an indictment. Section 6738, Snyder's Comp. Laws. And while we are not called upon to decide the point, and do not decide it, yet there are numerous respectable authorities holding that the presence of a stranger or unauthorized person in the grand jury room only while testimony is being taken, and not while the jury are voting or deliberating, will not invalidate the indictment, unless it is shown that the accused was thereby prejudiced in some substantial right. *Bennet v. State,* 62 Ark. 516, 36 S. W. 947; *State v. Bate,* 148 Ind. 610, 48 N. E. 2; *State v. Bacon,* 77 Miss, 366, 27 So. 563; *State v. Justice,* 11 Or. 178, 8 Pac. 337 [50 Am. Rep. 470]; *Mason v. State* (Tex.) 81 S. W. 718; *State v. Brester,* 70 Vt. 341, 40 Atl. 1037, 42 L. R. A. 444; *State v. Wood,* 112 Iowa, 484, 84 N. W. 503; *Wilson v. State,* 41 Tex. Cr. R. 115, 51 S. W. 916."

An examination of the several authorities cited by Judge Richardson in *Fooshee v. State, supra,* fully sustains the views which he therein expresses, but does not decide, and we adopt said *dictum* as the law on the question to

which it relates, and are of the opinion that the presence of Mr. Wyand in the grand jury room, as shown by the evidence in this case, was not a ground for setting aside the indictment in this case, as it appears from the records that Mr. Wyand was not in the grand jury room when the grand jury was deliberating or voting upon the indictment in this case.

Section 5780, Rev. Laws 1910, provides:

That "the indictment or information must be set aside * * * in any of the following cases: * * * Third. When a person is permitted to be present during the session of the grand jury while a vote on the finding of the indictment is being taken."

The defendant further urges that because the grand jury became dissatisfied with "their worthy county attorney" and his assistants as their legal advisers, and repeatedly requested the county attorney to arrange for another legal adviser of the grand jury, and upon the county attorney refusing so to do reported his refusal to the court, with the request that the court aid them in causing the county attorney to discharge one of his assistants and appoint another assistant during the session of the grand jury, which the court properly informed them it had no authority to do, and the grand jury had prepared a written complaint against the county attorney, which was not presented to the court, but of which the county attorney had knowledge, and thereafter the county attorney secured the resignation of Stewart, with the understanding that he was to be reappointed after the term of the grand jury, and appointed B. B. Blakeney to fill the vacancy caused by the resignation of Stewart, and the term of the said Blakeney was to terminate when the embezzlement cases were disposed of, and the said Blakeney filed with the county com-

missioners a claim for $500 for his services rendered the grand jury, that the appointment of said Blakeney was collusive and void and that therefore the indictment in this case should be set aside.

Conceding but not deciding that the resignation of Stewart and the appointment of Blakeney were brought about by collusion and coercion, nevertheless Blakeney was a duly appointed assistant county attorney, took the oath of office, and was legally authorized to appear before the grand jury and advise them as to finding the indictment preferred in this case, and of this the defendant cannot legally complain, nor of the fact that Blakeney filed an illegal caim of $500 as compensation for services rendered the grand jury, as neither the appointment of Bakeney as assistant county attorney nor his filing an illegal claim for his services rendered the grand jury in any way prejudiced the material rights of the defendant and authorized the indictment to be set aside.

The defendant also urges that the court committed prejudicial error in overruling the motion of the defendant for a change of venue. A careful investigation of the record does not disclose that the defendant asked for a change of venue. It is true that, prior to the severance granted in this case, the defendant's codefendant, Wainwright, filed a motion for a change of venue, and offered voluminous evidence in support thereof, which the state met by counter evidence, and which motion was denied; but there was no evidence offered to show the defendant entitled to a change of venue. In fact, on the hearing of Wainwright's motion for a change of venue, nothing was said in regard to any prejudice existing against the defendant Middleton in Muskogee county. We conclude that there

was no motion filed by the defendant Middleton for a change of venue.

It is a constitutional right of a defendant to be tried in the county in which the offense was committed, and he cannot be deprived of this constitutional right by a change of venue being granted his codefendant. The granting of a change of venue to a defendant does not have the effect to also change the venue as to his codefendant who has not joined in the motion for a change of venue.

The defendant complains as to the sufficiency of the indictment. The indictment when demurred to contained two counts, but before the jury was sworn the state, by leave of court, dismissed the second count and stood upon the first count, and this the defendant says could not be legally done. In support of said contention the defendant cites only one authority (Bonitzer v. State, 4 Okla. Cr. 354, 111 Pac. 980), which authority is not at all in point, said case not involving the question of the right of the state to dismiss one or more entire counts of an indictment. Certainly it does not require the citation of authorities to show that the rights of the defendant were not prejudiced by lessening his burden by dismissing said count, and that he has not the slightest right to complain at such dismissal. The second count of the indictment having been dismissed, we have only to determine whether or not the demurrer should have been sustained to the first count of the indictment, as whether or not the second count thereof was subject to the demurrer interposed is entirely immaterial and will not be considered.

We have carefully considered said first count of the indictment—the only one upon which the defendant was tried—and are satisfied that it charges only one offense,

the embezzlement by Wainwright, and the aiding and abetting of Middleton in the embezzlement of $4,000, and that the indictment sufficiently informed the defendant of the offense with which he was charged, and was legally sufficient, as has been often held by this court.

The defendant further complains that the court committed fundamental error—the defendant having exhausted his peremptory challenges—in overruling his respective challenges of W. H. Westlake, W. H. Keaton, S. E. Haxelet, and Fritz Haand, who were members of the jury which returned the verdict of guilty against the defendant.

As a condition precedent to the conviction of the defendant, it had to be established that Wainwright committed the embezzlement charged, and therefore any juror who had an opinion as to the general guilt of Wainwright having embezzled the county funds was an improper juror in this case, regardless of the fact that he had no opinion as to the guilt or innocence of the defendant.

Section 20 of article 2 of the Constitution of this state provides that—

"In all criminal prosecutions the accused shall have the right of a speedy and public trial by an impartial jury of the county in which the crime shall have been committed."

"The court should resolve all doubts as to the competency of the juror in favor of the defendant." *Johnson v. State*, 1 Okla. Cr. 321, 97 Pac. 1059, 18 Ann. Cas. 300; *Horn v. State*, 13 Okla. Cr. 354, 164 Pac. 685.

In *Scribner v. State*, 3 Okla. Cr. 601, 108 Pac. 422, 35 L. R. A. (N. S.) 985, it is said:

"The principle that every reasonable doubt must be resolved in favor of the defendant applies in this instance

[as to the qualifications of jurors] as well as to the evidence offered before the jury on the final trial. The evidence offered as to the qualifications of jurors enters into and becomes a material part of the trial, as much as the evidence offered by the witnesses on the part of the state, and in this case the trial court should have resolved that doubt in favor of defendant."

In *Scribner v. State, supra,* it is also said:

"It is a physical impossibility for a juror, who has an opinion based on what he has understood to be the facts in the case, to weigh the evidence as though he had never heard of the case and had not already made up his mind. He may have an earnest and conscientious desire to do so, and to deal out exact justice, but he will unconsciously attach a greater weight to the evidence which conforms to his preconceived opinion than he would otherwise do. He is not in that frame of mind * * * which is necessary to enable him to fairly and impartially judge as to the weight to be given to the evidence of each witness appearing before him."

"Persons called as jurors, who have heard and read detailed accounts of an alleged offense, from which they have formed such an opinion as to the guilt of an accused as will require evidence to remove, are not qualified jurors, although they believe, and express their belief, that they can and will fairly try the case upon testimony produced." *Scribner v. State,* 3 Okla. Cr. 601, 108 Pac. 422, 35 L. R. A. (N. S.) 985.

In *Tegeler v. State, supra,* this court said:

"The fact that said juror did testify in answer to questions from the court that, if selected as a juror, he could and would wholly disregard such opinion, and base his verdict alone upon the testimony and the charge of the court, did not in our judgment do away with and destroy the effect of his previous testimony; for, if it did, the juror would then become the judge of his own qualifica-

tions. When a juror states that he has an opinion as to the guilt of the defendant, he is not made competent to sit in the case merely because he may have stated that he can and will lay aside this opinion if taken on the jury and give the defendant a fair and impartial trial, and be governed alone in making up his verdict by the testimony of the witnesses and the charge of the court."

In the case of *Scribner v. State,* 3 Okla. Cr. 601, 108 Pac. 422, 35 L. R. A. (N. S.) 985, it is said:

"In determining this case, although the evidence may show the defendant guilty beyond peradventure of a doubt, and sufficient to support a verdict with the death penalty, we must nevertheless set a precedent under which a perfectly innocent man may be tried, and have preserved to him his constitutional rights of the presumption of innocence and a trial before an impartial jury. If a juror has prejudged the guilt of the defendant before hearing the sworn testimony, then it cannot be said that the defendant had a trial before an impartial jury. It is a physical impossibility for a juror, who has an opinion based on what he has understood to be the facts in the case, to weigh the evidence as though he had never heard of the case, and had not already made up his mind. He may have an earnest and conscientious desire to do so, and to deal out exact justice, but he will unconsciously attach a greater weight to the evidence which conforms to his preconceived opinion than he would otherwise do. He is not in that frame of mind which the Constitution contemplates, and which is necessary to enable him to fairly and impartially judge as to the weight to be given to the evidence of each witness appearing before him. * * * The principle that every reasonable doubt must be resolved in favor of the defendant applies in this instance as well as to the evidence offered before the jury on the final trial. The evidence offered as to the qualifications of the jurors enters into and becomes a material part of the trial, as much so as the evidence offered by the witnesses on the part of the state,

and in this case the trial court should have resolved that doubt in favor of the defendant, and sustained his challenges for cause of these jurors."

In the case of *Coughlin v. People,* 144 Ill. 140, 33 N. E. 1, 19 L. R. A. 57, Mr. Chief Justice Bailey, rendering the opinion of the court, in part said:

"In the review of authorities we have already made, it has sufficiently appeared that, where the opinion of the juror is only slight or transient, or is hypothetical, very considerable reliance is placed upon his statement under oath, that his opinion is not of such character as will interfere with his action as a juror. Indeed, where the opinion is shown to be of that character, such statement is usually one of the most satisfactory tests of the juror's impartiality. But the holding of this and other courts is substantially uniform that where it is once clearly shown that there exists in the mind of the juror, at the time he is called to the jury box, a fixed and positive opinion as to the merits of the case, or as to the guilt or innocence of the defendant he is called to try, his statement that, notwithstanding such opinion, he can render a fair and impartial verdict, according to the law and the evidence, has little, if any, tendency to establish his impartiality."

In 1 *Burr's Trial,* 465 (Fed. Cas. No. 14692g), Mr. Chief Justice Marshall used this language:	,

"Light impressions, which may fairly be supposed to yield to the testimony that may be offered, which may leave the mind open to a fair consideration of that testimony, constitute no sufficient objection to a juror; but that those strong and deep impressions which will close the mind against the testimony that may be offered in opposition to them, which will combat that testimony, and resist its force, do constitute a sufficient objection to him."

In case of *State v. Otto,* 61 Kan. 63, 58 Pac. 996, Mr. Justice Smith, delivering the opinion of the court, used this language:

"It is the duty of the court, imposed both by statute and by principles of natural justice, to stand as a vigilant guard over the jury box, to the end that bias, prejudice, and preconceived opinion do not enter. It is better that the first impression of a case come from the testimony of the witness after the jurors are sworn to try the cause. While there is recognized in the law a distinction between an impression and an opinion, yet there is so little difference between the two, and the step so short from one to the other, that courts should be certain that a juror's mind which is possessed of the one has received it with pressure too weak to break over the dividing line."

We think it clearly appears from the evidence of each of the challenged jurors for cause, which challenges were overruled, and said jurors permitted to sit upon the jury in this cause, without distinguishing one case against Wainwright from another, that they were of the opinion that Wainwright was guilty of embezzling county funds generally, and that it would take evidence to remove such opinion, and consequently had a fixed opinion of a necessary charge to be proven to convict the defendant—that Wainwright had embezzled, together with other embezzlements, the said $4,000 alleged to have been embezzled in this case; and therefore the said challenged jurors entered upon the trial with their minds favorably influenced to the conviction of the defendant, and at least placed upon the defendant the burden of eradicating such adverse opinion, and also deprived the defendant of the benefit of the presumption of innocence as to a material fact averred in the indictment, the guilt of Wainwright.

And applying the rules announced and the reasons given therefor in the above-cited cases to the evidence had on the *voir dire* examination of the jurors challenged for cause, which challenges were overruled and said challenged

jurors allowed to act as triers of this cause, the defendant having exhausted his peremptory challenges, we are of the opinion that the court committed prejudicial error in overruling each of the challenges to the said jurors, and the defendant was thereby denied that fair and impartial trial guaranteed to him by the Constitution and laws of this state.

The state in its brief has not combatted, or cited any authority to show that the court did not err in overruling said challenges to said jurors.

The defendant insists that the court committed prejudicial error in refusing to give requested instructions numbered, respectively, 1, 3, 7, and 8, and in this instance we are not in accord. Said instructions numbered 1, 7, and 8 are, in effect, the same; are mere different ways of stating the same legal proposition, and are each, in effect, covered by the general instructions of the court, the court having instructed the jury—

"that if they entertain a reasonable doubt as to whether the said Middleton did knowingly, unlawfully, fraudulently, and feloniously aid or abet the said W. H. Wainwright in the commission of the embezzlement alleged in the indictment, then and in that event you should acquit him"

—and thus necessarily instructing the jury that the mere acquiescence of the defendant in the commission of said embezzlement was not sufficient to warrant the conviction of the defendant, and practically covering the legal propositions contained in said requested instructions numbered, respectively, 1, 7, and 8.

The vice of requested instruction numbered 3 is that it requires the presence of the defendant when the embezzlement was committed as necessary to the conviction of the defendant, while the statute under which the defendant

was prosecuted (section 7437, Rev. Laws 1910) provides that—

"If any person shall advise, aid, or in any manner knowingly participate in" an embezzlement by an official of public funds, he "shall be deemed guilty of an embezzlement"

—either of which said interdicted acts may be done without the actor being in the presence of the official committing the embezzlement.

The defendant insists that the court committed reversible error in giving paragraph F of the instructions given the jury. We are of the opinion that said instruction correctly states the law of the case.

The defendant further insists that the giving of paragraph G of the instructions given the jury was prejudicial error, and in this contention we think there is some merit; that the said instructions do not technically correctly state the law, as the defendant might be indirectly concerned without having knowledge of the embezzlement charged, and yet not rendered guilty as charged in the indictment in this case, it being necessary to establish his guilt to show that he knowingly advised, aided, or abetted Wainwright in the commission of the embezzlement charged; but while we think the said instruction subject to criticism, yet, considering the instructions as a whole, which we must do, the giving of said instruction is not such error as should cause a reversal of this case.

As the errors pointed out must work a reversal of the judgment rendered, we deem it inadvisable to lengthen this already extended opinion by a review of the other errors assigned.

However, we deem it proper to direct the attention of the trial court for guidance, in the event of another trial of this case, to the rule as announced in *State v. Rule,* 11 Okla. Cr. 237, 144 Pac. 807, that, "as a general rule, evidence of other offenses, though of the same general nature, is not admissible for the purpose of showing that the defendant is guilty of the particular offense charged," unless the evidence comes within the well-settled exceptions to said general rule as stated in said case.

And also to direct attention to the rule declared in *Driggers v. United States,* 1 Okla. Cr. 167, 95 Pac. 612, 129 Am. St. Rep. 823, that the statements or acts of one conspirator, made or done prior to the formation of such conspiracy, are inadmissible as against a coconspirator.

The judgment of the trial court is reversed, and the cause remanded.

DOYLE, P. J., and MATSON, J., concur.